State v. Graves, 21 N. M. 556.

---

[No. 1746, Sept. 22, 1915.]
[On Motion for Rehearing, May 1, 1916.]
## STATE v. GRAVES.

### SYLLABUS BY THE COURT.

1. The provisions of section 1529, Code 1915, concerning
punishment of certain crimes, are not in conflict with section
1613, Code 1915.                                    P. 562

2. Nonjurisdictional questions raised here for the first time
will not be considered by the court.           .    P. 563

3. On a prosecution for a particular crime, evidence which
shows or tends to show that accused has committed another
crime wholly independent of that for which he is on trial
is irrelevant and inadmissible. But, where other criminal
acts of accused form an inseparable part of the whole deed
·or transaction, or where such acts are concomitant parts of
the criminal act, evidence thereof is admissible, notwithstand-
ing that it proves or tends to prove the commission of a
·crime not charged in the indictment.            P. 564

State v. Graves, 21 N. M. 556.

4. The verdict of a jury will not be disturbed where there is any substantial evidence to support it.

P. 567

5. An exception to a given instruction must specifically point out where the instruction is alleged to be erroneous. When this is not done, and no requested instruction properly stating the law has been tendered, the given instruction is not subject to attack in this court.

P. 568.

6. It is not error for the court to give, without request, a cautionary instruction concerning the fact that the accused did not take the witness stand to testify in his own behalf.

P. 569

7. Where a party asks for a new trial on the ground of newly discovered evidence, he must show that such evidence could not have been discovered prior to the trial by the exercise of due diligence.

P. 570

8. It is within the range of legitimate argument for counsel to discuss all inferences which may be drawn from the evidence and to impress them upon the jury.

P. 571

ON MOTION FOR REHEARING.

9. Where there is no substantial evidence to support the verdict of a jury, the judgment entered thereon will be set aside on appeal.

P. 573

Appeal from District Court, Chaves County; Richardson, Judge.

Roscoe T. Graves was convicted of larceny, and appeals. Reversed, and new trial awarded.

State v. Graves, 21 N. M. 556.

W. W. GATEWOOD and R. L. GRAVES, both of Roswell, for appellant.

Sec. 17, c. 36, L. 1907, repeals sec· 79 C. L. 1897, and the judgment of the court is without authority of law in that the punishment exceeds what the last mentioned law prescribes.

Wilson v. Ohio, etc., 64 Ill. 542, s. c. 16 Am. Rep. 565; State v. Studt, 1 Pac. (Kan.) 635; State v. Carbon, 30 Pac. (Wash·) 728; U. S. v. Tynen, 11 Wall. 92, s. c. 20 L. Ed. 153; Wood v. State, 47 Ark. 488, s. c. 1 S. W. 709; Wagoner v. State, 90 Ind. 504; Inman v. State, 47 S. W. 559; Mack v. Jastro, 58 Pac. (Cal·) 372; Koons v. Cluggish, 34 N. E. 652; Nichol v. St. Paul, 83 N. W. 375; Thomas v. Butler, 38 N. E. 809; Rogers v. Bartrous, 58 Am. Dec· (Tex.) 100; Com. v. Kimball, 21 Pick. (Mass.) 373.

Proof of distinct substantive crime is not admissible unless there is some logical connection between it and the crime charged.

People v. Cline, 83 Cal. 374; Miller v. Com., 78 Ky. 15; State v. Reaves, 71 Mo. 419; Boland v. People, 19 Hun. 80; English v. State, 15 S. W. (Tex·) 649; Clark v. State, 17 S. W. (Tex.) 1089; Carter v. State, 23 Tex. App. 508; People v. Jacks, 76 Mich. 218; Alexander v. State, 18 Ohio, 221; Famis v. People, 129 Ill. 521, s· c. 16 Am. St. Rep. 283; 105 Am. St. Rep. 976, 62 L. R. A. 197; Ter. v. Caldwell, 14 N. M. 535.

No conviction will be sustained where corpus delicti has not been established·

McBride v. People, 5 Colo. App. 91, s. c. 37 Pac. 953; People v. Hurley, 60 Cal. 74; Lovelady v. State, 14 Tex. App. 545.

As to what is substantial evidence, see
Frazier v. Bank, 137 Pac. (N. M.) 592·

State v. Graves, 21 N. M. 556.

. Court erred in instructing jury on legal effect of appellant's failure to testify.

Daugherty v. State, 128 S. W. 401.

Court should have granted new trial because of inflammatory remarks of special attorney for state.

Dupree v. State, 134 Pac. 86; Bean v. Kenseder, 135 Pac. 1180; Cent. Dig. Cr. Law, sec. 1669; Dec. Digest Cr. Law, sec. 719.

. IRA L. GRIMSHAW, Assistant Attorney General, for the State.

Sec. 79 C. L. 1897 is not repealed. The identical question argued by appellant was decided adverse to him in Welburn v. Territory, 10 N. M. 402.

. If contention last stated is erroneous then judgment is void only as to the fine imposed, for that would be all that is in excess of laws of 1907.

. Ex parte Cica, 137 Pac. (N. M.) 598, 600.

Proof of other larcenies was admissible.

. Territory v. West, 14 N. M. 546, 558; Territory v. Caldwell, 14 N. M. 535, 545; Insurance Co. v. Mercantile Co., 13 N. M. 241, 254; Territory v. Valles, 15 N. M. 228, 231.

Court may instruct on legal effect of failure of appellant to testify, whether requested so to do or not.

12 Cyc. 638-639; State v. Weems, 96 Ia. 426, 448; Gerfuson v. State, 52 Neb. 432; Pearl v. State, 63 S. W. 1013, 1017; Grant v. State, 70 S. W. 954, 955; People v. Hack, 150 N. Y. 291, 307.

Motion for new trial on ground of newly discovered evidence was defective.

Hancock v. Beasley, 14 N. M. 239; Territory v. Claypool et al., 11 N. M. 568; State v. Padilla, 138 Pac. (N. M.) 143; State v. Jesus Gonzales, handed down Nov. 28, 1914.

As to the extent to which counsel may discuss matters before a jury, see:

12 Cyc. 573; Territory v. Chacon, 7 N. M. 241; Lide v. State, 133 Ala. 43; Cross v. State, 68 Ala. 476; Milan v. State, 108 Ga. 29; Ogletree v. State, 115 Ga. 835; Commonwealth v· Barrows, 176 Mass. 17; People v. Barnes, 113 Mich. 213.

### OPINION OF THE COURT.

ROBERTS, C. J.—Will Vermillion, a stockman of Hagerman, N. M., lost a number of cattle in the fall of 1911 or 1912, because of a flood of Felix creek, which tore down a portion of the fence inclosing his pasture. Among the animals which escaped at that time was a brindle and white spotted muley yearling steer branded "7HY" left shoulder, side, and hip, "NZ" or "HZ" on right side, and a small "L" on left hip. The animal was a favorite of its owner on account of its gentle disposition. Vermillion saw nothing of the steer after this time until the winter of 1913, when he went to La Mesa, Tex., about 213 miles east of Roswell, where the animal, with others, was found in the possession of the Texas Cattle Association. Vermillion rode into a herd of cattle there and cut this particular steer out from the rest of the herd without regard to the brand marks, identifying the animal by its peculiar color. The animal was roped and inspected, and it was discovered that the old brand marks on the animal had been defaced by running bars through them, and a new brand, "YOU," had been placed upon the steer, the "Y" defacing the "7" of the old brand. The hair had not grown over the fresh brands. The ears of the animal had been cut so that the old earmarks could not be distinguished. The owner had not given permission to appellant to take possession of the animal, nor had he sold it. The animal had been purchased by Vermillion from a man named Hammond, when it was an early yearling·

In the latter part of October, 1913, the appellant, with two of his employés named Nolan Standifer and Grady Woods, drove two or three hundred head of cattle from

the ranch of appellant in Chaves county, N. M., to his ranch near Brownfield, Tex. Nolan Standifer did not notice the Vermillion steer in that drive, but did notice two animals branded "hip O," which he recognized as the property of Spence Jouell. These two "hip O" steers were driven with the rest of the herd from New Mexico to Texas. The herd arrived in Texas at appellant's ranch after dark on a Saturday night and were put in a pasture. The following Monday morning the appellant cut out five head of steers from the herd which he had driven from New Mexico and personally roped and branded them. One of the five was the Vermillion animal. It was branded by appellant as heretofore mentioned and the ears were cut. The brands on the other four animals were defaced, and the "YOU" brand of appellant placed upon them. They were then driven back into the herd, and later in the day cut out from the herd again and held temporarily some distance from the ranchhouse, when they were driven to a two-section pasture of appellant about 2½ miles distant from his ranchhouse. One of the witnesses testified that there were no other cattle in the two-section pasture except the five which had been branded by appellant, while other witnesses testified that the five were pastured with about eighty-five other head. The cattle inspector of Texas Cattle Association discovered these five burned steers in appellant's pasture, and cut them out from the other cattle and drove them to the ranch of a neighbor about 5 miles distant. Subsequently appellant returned to his ranch from a trip and offered to sell to a Mr. Bryant all the cattle he had running in the "YOU" brand. Appellant exhibited two bills of sale to Bryant and asked the latter to place his signature on them as a witness to the transaction, but Bryant declined on the ground that he could not identify the animals, and stated that he did not want his name connected with the transaction. At the time the cattle inspector roped and inspected the Vermillion steer the hair on the animal was long and it was difficult to decipher the old brands on the animal. The hair was sheared, and the

old brands then were plainly shown. The other two of
the five steers branded by appellant were owned by T.
Ray Rice and Bert Muncey, and had been taken without
the permission or consent of their owners. The cattle
inspector of New Mexico testified that he drove through
the herd near the Texas-New Mexico boundary line and
discovered no cattle like the Vermillion animal therein.
He also testified that no animals bearing the "hip O"
brand were in the herd. The appellant did not take the
stand. Other facts not necessary to be stated here will
be discussed later in the opinion.

[1] The appellant was sentenced to a term in the
penitentiary of not less than 2½ years, and not more
than 5 years, and fined $500. He contends that the sen-
tence was in excess of that authorized by law, and his
contention is based upon the theory that section 79 of the
Compiled Laws of 1897 (section 1613, Code 1915), which
prescribes the penalty for larceny of certain animals, has
been impliedly repealed by section 17, c. 36, Laws of
1907 (section 1529, Code 1915.)

Section 79, supra, provides, in effect, that any person
who shall steal, embezzle, or knowingly drive, etc., any
neat cattle, horse, mule, sheep, goat, ass, or swine of
another shall be deemed guilty of a felony, and shall be
punished by imprisonment for not less than one year nor
more than 5 years, and by a fine of not less than $500
nor more than $5,000, at the discretion of the court.

Section 17, c. 36, Laws of 1907, provides:

"Any person convicted of the crime of larceny or of the
crime of embezzlement or of the crime of felouiously re-
ceiving stolen goods or property, shall be punished by im-
prisonment in the penitentiary for any period not less than
cne year nor more than ten years if the value of the prop-
erty stolen, embezzled or felouiously received shall exceed
twenty dollars; and by imprisonment in the county jail for
any period not more than three months, or by fine not ex-
ceeding one hundred dollars, or both such fine and impri-
sonment in the discretion of the court if the value of the
property shall be twenty dollars or less."

Section 79, supra, is section 14 of chapter 47 of the
Laws of 1884, and section 17 of chapter 36 of the Laws

of 1907 is identical with section 8, c. 80, Laws of 1891 (section 1187, C. L. 1897), except as to the prescribed periods of punishment·

In the case of Wilburn v. Territory, 10 N. M. 402, 62 Pac. 968, the question now urged was presented to the court, and it was held that the law of 1884 was not impliedly repealed by the law of 1891, one being an act in special form, enacted for the particular protection of live stock, while the other was a general act defining the punishment of larceny, graded according to the value of the property stolen. That case is decisive of this question and settles it adversely to the contention of appellant.

[2] The appellant assigns as error the giving of instruction numbered 8 by the court of its own motion. That instruction was to the effect that the possession of recently stolen property, if not satisfactorily explained, is a circumstance to be taken into consideration by the jury. The appellant argues that the court should not have given the instruction, because: First, there was no evidence that the animal had been stolen; and, second, 18 months elapsed from the time the animal escaped until it was recovered from the appellant, and that possession within such time does not, as a matter of law, constitute recent possession. Many authorities are cited by appellant as to what constitutes recent possession, but manifestly each case must depend upon the circumstances surrounding it. But it is unnecessary to determine whether the instruction was erroneous or not, because the exception taken to the instruction proceeded upon an entirely different theory of attack than is now argued, viz., that the instruction should have limited the application of its principle to the possession of the Vermillion animal alone. The questions which appellant argues are raised here for the first time, and, not being jurisdictional, are not properly before the court for determination, as this court has held in a long line of cases. See State v. Holloway, 19 N. M. 528, 146 Pac· 1066, L. R. A. 1915F, 922.

[3] The court permitted the state to show over the objection of the appellant that among the cattle driven by appellant from New Mexico to Texas were two steers of the property of Spence Jouell, which had been stolen from him. At the time of the introduction of this evidence the state had not proved the corpus delicti of the larceny charged in the indictment. One of the objections made to such evidence by appellant was that the corpus delicti had not been proved, and therefore evidence of the commission of other crimes by the accused could not be received to throw light on the intent of appellant in doing an act which had not yet been proved. It does not appear from the record, unless it is contained within the court's instructions to the jury, upon just what theory the evidence was admitted.

The general, primary, and well-established rule is that on a prosecution for a particular crime evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible. Underhill, Crim. Evid. § 305; 12 Cyc. 405; 4 Elliott on Evid. § 2720; 1 Wharton, Cr. Evid. § 30. But there are circumstances where the rule is without application. One of these circumstances arises where the other criminal act is an inseparable part of the whole deed or transaction, and is then received, notwithstanding that it tends to prove a distinct crime, on the theory of necessity. 1 Wigmore on Evid. § 218. In other words, in that circumstance the other crime becomes material, because of the necessity of proving the whole transaction in order to apprise the court and jury of all the circumstances of the case. The exception to which we refer is illustrated in concrete form by Mr. Wigmore when he says:

"Suppose that A. is charged with stealing the tools of X. The evidence shows that a box of c. rpenter's tools were taken, and that in it were the tools of Y. and Z., as well as of X. Here we are incidentally proving two add'tional crimes, because they are necessarily interwoven with the stealing charge, and together form one deed. * * * While

thus, on the one hand, these concomitant crimes are not ob-
noxious to the reasons of the character rule, so also they
are necessarily gone into in proving the entire deed of which
the act charged forms a part. There is therefore not only
a necessity for proving them, but no objection against prov-
ing them."

The exception to the rule is spoken of by some au-
thors as the res gestae doctrine or exception, which is
criticized by Mr. Wigmore, who asserts that the correct
designation is "necessary parts of the proof of an entire
deed," or "inseparable elements of the deed," or "con-
comitant parts of the criminal act." 1 Wigmore an Evid.
§ 218. In 12 Cyc. 406, 407, the doctrine is thus stated:

"It often happens that two distinct offenses are so in-
separably connected that the proof of one necessarily in-
volves proving the other, and in such a case, on a prosecu-
tion for one, evidence proving it cannot be excluded because
it also proves the other. Evidence of another and distinct
crime is admissible if it were committed as part of the same
transaction and forms part of the res gestae."

An interesting discussion of the subject is found in 4
Chamberlayne, Mod. Law of Evid. § 2588. See, also, 4
Elliott on Evidence, § 2720; 1 Wharton, Cr. Law, §§ 31-
33. A case illustrating the doctrine is that of Glover v.
State (Tex. Cr. App.) 76 S. W. 465. The state intro-
duced evidence showing that on a certain night appellant
took two horses from the prosecuting witness in West
Dallas, and then proceeded in the direction of Oak Cliff,
and about a mile from the first theft took three other
animals belonging to another person. He then drove the
horses to a neighboring town and sold them. The court
held that evidence of the collateral crime was so intimate-
ly connected with the theft of the animal in question as
to become important in developing the res gestæ of the
theft charged against appellant and to prove the guilt of
the accused by circumstances connected with the theft.

The theory of the state in the prosecution of the case
at bar was that while the Vermillion steer had escaped
from its pasture and become a sort of an estray, still the
appellant had rounded up the animal, and, with many

others, three or four of which appellant did not own, but had stolen, drove it and them from New Mexico to his ranch in Texas. There was evidence tending to corroborate and prove that theory. In proving the asportation of the Vermillion steer it became necessary to prove the entire transaction, including the acts of larceny by appellant of cattle belonging to others, and manifestly the doctrine herein announced justifies the admission of such evidence. While such proof tended not only to prove the commission of a crime not charged in the indictment, as well as to prove the venue of the crime and perhaps the felonious intent of appellant in the commission of the act charged in the indictment, still such proof was admissible on the ground that it was an inseparable part of the entire deed, or a concomitant part of the criminal act.

The appellee cites the cases of Territory v. West, 14 N. M. 546, 99 Pac. 343, and Territory v. Caldwell, 14 N. M. 535, 98 Pac. 167, as decisive of the proposition urged in this assignment. In the first of those cases, Territory v. West, the court admitted evidence of other crimes than that charged in the indictment, and the action of the trial court was sustained by the appellate court on the ground that such evidence tended to show a systematic purpose or scheme on the part of the appellant to steal and sell horses. In the second case, Territory v. Caldwell, the court admitted evidence which disclosed that on the day the calf in question was rounded up and the day the defendants were arrested, and the day following, officers rounded up near the home of appellant a dozen or more calves running in appellant's brand which had been branded and hobbled and were in very poor flesh. Some of these calves were recognized as the property of other people. The court said that the evidence was admitted to show the intent of the accused, but the appellate court held, under the authority of Territory v. Livingston, 13 N. M. 218, 84 Pac. 1021, that such evidence constituted an inseparable part of the criminal act charged, and, being such, was properly admitted. In Territory v. Livingston, supra, evidence of the theft of a

mule by appellant at the same time and as a part of the same transaction as that charged in the indictment was held proper.     This case, as well as the Caldwell Case, supports the view we have announced herein.

Appellant assigns as error the refusal of the court to give requested instruction numbered 12.     That instruction reads as follows:

"You are instructed that certain evidence has been introduced by the state in this case for the purpose of showing the defendant's connection with the taking of other animals in Chaves county, N. M., on or about the date charged in the indictment as the date of the alleged theft of the so-called Vermillion animal, to wit, animals claimed to have ben the property of Joel & Cowden, Bert N. Muncey, and T. Ray Rice, but that this evidence should be considered by you only in the even that you find from other evidence in the case to your satisfaction beyond a reasonable doubt that the defendant took the so-called Vermillion animal in Chaves county, N. M., and only in the event that upon all of the evidence in the case you shall find that there is a reasonable doubt as to whether the defendant in the taking of said Vermillion animal took the said animal with a felouious intent; that is, with an intent to steal the same, and not in good faith, and because he had purchased said animal or had iawful claim thereto, or was otherwise authorized legally to take and handle said Vermillion animal."

It will be seen that appellant attempted to limit the consideration of proof of other crimes far beyond its legitimate scope.     As we have said in this opinion, such evidence was admissible as a part of the res gestæ of the crime charged in the indictment, and therefore that part of the requested verdict which sought to advise the jury that such evidence should be considered by them only after they were satisfied beyond a reasonable doubt that defendant took the Vermillion steer in Chaves county, and only in the event that the jury entertains a reasonable doubt as to whether the taking was felonious or not, is clearly erroneous.

[4]     Under special point 5 we are asked to reverse the case because of alleged insufficiency of substantial evidence to support the verdict of the jury.     By a long line of decisions this court has held that the verdict of a jury will not be disturbed on appeal when there is any sub-

stantial evidence to support it.   See State v. Gonzales, 19 N. M. 467, 144 Pac. 1144.   The logic of the rule is unassailable.   The facilities of the appellate court for ascertaining the truth of a transaction cannot be compared with the facilities of the judge and jury in that respect. Unless the cold typewritten or printed record establishes that there is no substantial evidence to warrant the verdict of a jury, this court will not set aside such verdict.

Throughout appellant's brief he argues that the only evidence before the jury was that the Vermillion animal escaped from its pasture in 1911 or 1912 and was found in the possession of the appellant in 1913 at his ranch in Texas.   A mass of authority is then cited by him to the general effect that unexplained and exclusive possession, unless recent, is not guilty possession; that possession alone is not sufficient to sustain a verdict of guilty; that bare possession of stolen property is not sufficient to show that it was stolen; that the mere fact that one is found in possession of stolen property on his own premises is not alone sufficient to sustain a verdict; that the proof simply indicates that the animal in question escaped, not that it was stolen, and was subsequently found in the possession of appellant, but no act of asportation is shown to have occurred in Chaves county, and the animal might well have strayed into Texas and been sold to appellant. The result of this case cannot be changed, even conceding that the propositions of law cited by appellant are sound.   The facts of this case are such that we cannot say that the evidence of appellant's guilt is not substantial.

[5]   Instruction 8½, given by the court of its own motion, advised the jury in effect that the testimony admitted by the court which concerned the alleged theft of other cattle by the appellant was to be considered by them only for the purpose of throwing light on the intent of the appellant in taking the Vermillion animal, if they found beyond reasonable doubt that the appellant did take the animal.   The Attorney General argues that the instruction is not subject to any attack by the appellant, be-

cause the exception taken to the instruction does not spe-cifically point out any defect in the same. The exception fails to point out any defect, or alleged defect, in the in-struction. Such exceptions have often been condemned by the court, and cannot be made the basis of attack in this court. Territory v. Lobato, 17 N. M. 666, 682, 134 Pac. 222; State v. Gonzales, 19 N. M. 467, 144 Pac. 1144, 1145.

[6] The appellant did not take the stand and testify in his own behalf. Notwithstanding that fact, the trial court instructed the jury that appellant had the right to go upon the witness stand to testify in his own behalf, if he chose to do so, but the law expressly provides that no presumption adverse to him shall arise from the mere fact that he does not place himself upon the stand, nor should that fact be considered as evidence of his guilt or innocence or prejudice the jury against the appellant in any way. The court further remarked in its instruction that such failure on the part of appellant should not be considered by the jury even as a circumstance against him, and no presumption was to be indulged in by the jury on account thereof. The argument of the appellant is ex-traordinary and novel. It is that the jury actually was prejudiced because the court gave the cautionary instruc-tion; it being contended that the duty of the court in the premises was silence as to the fact that appellant did not take the stand. The question has been presented to other courts and the point held to be without merit. In 12 Cyc. 638, it is said that the court is not required to give such an instruction unless requested so to do, "but the right of the court so to instruct, of its own motion, with-out request, has been frequently decided." In State v. Weems, 96 Iowa, 426, 448-449, 65 N. W. 387, 394, it was said:

"It is said that the court has no right to refer to the mat-ter of the defendant's failure to testify. * * * The in-struction was in the interest of defendant, and was induced, likely, by an apprehension that the jury might of its own motion consider the fact that the defendant did not take the witness stand to testify and draw improper inferences there-from. Certainly the instruction could have done no harm."

In Ferguson v. State, 52 Neb. 432, 438, 439, 72 N. W. 590, 592 (66 Am. St. Rep. 512) the court said:

"The argument of the prisoner's counsel is that this statute expressly prohibits any reference whatever being made to the fact that the defendant omitted to testify, at least unless there is a request for an instruction to that effect. * * * It is evident that, if the court had the right to give such instruction, had it been requested to do so by the defendant, it was not reversible error to give it in the absence of such request. * * * When a prisoner is not sworn, it is the duty of the court to inform the jury, if requested to do so, that they are not to draw any inference of guilt from the fact that he did not testify. If the jury in the case at bar had not been so directed they might have regarded, as a criminating circumstance, the fact that he had not been sworn. The instruction, instead of being prejudicial to the accused, was favorable to him."

In Pearl v. State (1901) 43 Tex. Cr. R. 189, 63 S. W. 1013, 1017, the court held that the giving of such an instruction, without request, was proper, and cited a line of Texas cases supporting it.

In Grant v. State (1902) 44 Tex. Cr. R. 311, 312, 70 S. W. 954, 955, the court also held such instruction proper and said:

"By quite a number of decisions, this has been held to be proper."

The court, in People v. Hoch, 150 N. Y. 291, 307, 44 N. E. 976, 982, said that "this was rather advantageous than prejudicial to the defendant," and we so regard the instruction. When the appellant failed to take the stand in his own behalf, the law in reference thereto became a part of the "law of the case," and the court, without request, could well have given the instruction of which appellant complains in this case. Appellant cites the case of Dougherty v. State, 59 Tex. Cr. R. 464, 128 S. W. 398, 401, to sustain his contention. That case not only does not sustain the proposition for which it is cited, but expressly upholds the doctrine announced by this court herein.

[7] Appellant asserts that the trial court erred in not granting a new trial on the ground of newly discov-

ered evidence. At the trial certain witnesses for the state testified that the Vermillion animal was branded "7HY" left shoulder, side, and hip, "L" with a small bar through it on left hip, and "NZ" on right side. The alleged newly discovered evidence upon which appellant based his motion was, in effect, that the steer in question had been sold by the cattle inspector, who testified in the case, at La Mesa, to a third person; that the animal had been butchered and the hide brought to Roswell and photographed; that the hide conclusively showed that it was branded "HZ," and not "NZ," as testified to by the witnesses for the state, as well as by Will Vermillion, the owner. Many affidavits are set up in the brief of appellant, but only a few of them are found as a part of the record in this case. All the affiants, with the exception of one, swear on information and belief that the one brand is an "HZ" rather than an "NZ." As we view the point, it is entirely immaterial whether the particular brand to which the affidavits refer was in reality "HZ" or "NZ," because there is abundant evidence in the record showing that the animal found at La Mesa was the same animal which the appellant branded and the same animal which Vermillion lost in New Mexico. But the motion for a new trial does not conform to the rules laid down in the case of Hancock v. Beasley, 14 N. M. 239, 91 Pac. 735, which was approved in State v. Padilla, 18 N. M. 573, 139 Pac. 143, 144. It fails to show that by the exercise of reasonable diligence this evidence could not have been discovered before the trial, and in other respects not necessary to mention does not conform to the rules laid down by this court in that regard. State v. Gonzales, 19 N. M. 467, 144 Pac. 1144.

[8] Appellant objects to certain alleged remarks made by the attorney for the state in his address to the jury. It is very doubtful whether the record is so drawn as to include the alleged inflammatory remarks of counsel. While the alleged inflammatory remarks are contained within the transcript, being attached by way of affidavits to the motion for a new trial, the alleged re-

marks were not prepared and submitted to the court in-
.dependently for the purpose of having them made a part
·of the record by bill of exceptions. In this respect the
record is in much the same condition as was the record on
the same question in the case of Territory v. Torres, 16
N. M. 615, 623, 624, 121 Pac. 27, 30, where the court
said:

"No bill of exceptions was taken at the time, and they
.appear only in the affidavit of the defendant's attorney filed
in support of the motion for a new trial."

But, assuming the question is before the court, the po-
·sition of appellant is not sustained.

"Counsel, in addressing a jury, when arguing within the
bounds of admitted or disputed facts, should enjoy the gre°t-
·est latitude consistent with decorum and a reasonable ambi-
.tion to win success by honorable means. * * * The trial
court enjoys peculiar facilities for observing the propriety or
impropriety of forensic arguments, and its discretion, when
invoked, should rarely be interfered with, in the absence of
obvious or probable injury." Chacon v. Territory, 7 N. M.
241, 247, 34 Pac. 448, 449.

In Territory v. Chamberlain, 8 N. M. 538, 542, 45
Pac. 1118, the court seems to have gone to the extent of
holding that only such argument as is calculated to in-
duce a jury to deal unfairly with defendant is prohibited.
The remark to which appellant seems to most strenu-
ously object was made by .the special prosecutor for the
state in his closing argument, and is supposed to be in
the following words:

"Where, oh, where is that rotten bill of sale—where, oh,
where is that fraudulent, fictitious bill of sale—signed by some
interloper going through the country fearing the light of day.

The evidence of the state tended to show that appellant
had exhibited a paper to a man named Bryant which pur-
ported to be a bill of sale for the cattle which appellant
had rebranded at his ranch in Texas. The remark was
simply an inference drawn from the evidence that the
alleged bill of sale was fraudulent and fictitious, or one
signed by some interloper.

"It is within the range of legitimate argument for counsel to discuss all inferences which may be drawn from the evidence, and to impress them upon the jury." 12 Cyc. 573.

The doctrine may be found illustrated and applied in numerous cases, a few of which, cited in the brief of the Attorney General, are Lide v. State, 133 Ala. 43, 31 South. 953; Cross v. State, 68 Ala. 476; Milam v. State, 108 Ga. 29, 33 S. E. 818; Ogletree v. State, 115 Ga. 835, 42 S. E. 255; Commonwealth v. Barrows, 176 Mass. 17, 56 N. E. 830, 79 Am. St. Rep. 296; and People v. Barnes, 113 Mich. 213, 71 N. W. 504. Tested by the New Mexico cases cited herein, the remarks, if made, were not improper.

It is unnecessary to discuss the assignment made by appellant to the effect that the court erred in refusing to give requested instructions numbered 4, 5, 6, 9, 10, 11, 13, and 14, further than to say that these instructions were in reference to the law of circumstantial evidence, which was fully covered by the court's instruction numbered nine and a half. Beginning on page 27 of appellant's brief, and ending on page 82, we find a verbatim copy of the motion for a new trial filed by appellant in the trial court, which he asserts contains the points made and upon which he relies in this court. But those points, so called, contain assertions only, without argument and authorities, and therefore the court will not consider them, except as they were argued under the special points, which we have done.

The judgment of the trial court is therefore affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.

### ON MOTION FOR REHEARING.

ROBERTS, C. J.—[9] In our former opinion in this case we held that there was substantial evidence to support the verdict of the jury, and therefore the same would not be disturbed on appeal. While we entertained some doubt as to the substantial character of that evidence, we believed it was sufficient in degree to warrant the holding. But upon motion for rehearing our attention has

been called to a misstatement of fact which we entertained and which appears in the statement of facts in the opinion. We said that:

"The following Monday morning the appellant cut out five head of steers from the herd which he had driven from New Mexico and personally roped and branded them."

A re-examination of the record shows that statement to be erroneous. The facts are that the first two nights following the arrival of the cattle in Texas they stampeded and became scattered over the surrounding country for some distance, and that they were then rounded up, with some 100 other cattle, and placed in one herd, and that it was from that herd that the Vermillion steer was cut out. Nolan Standifer, a witness for the state, testified that he helped round up 300 or 400 cattle in New Mexico for appellant, but he does not testify as to the number which he helped appellant drive from this state to Texas. John Bryant, a witness for the state, testified that 200 or 300 head of cattle were in the herd driven from New Mexico to Texas, and on cross-examination said that there were 400 in the herd after they had been rounded up on the appellant's Texas ranch. He further testified on cross-examination as follows:

"Q. You know that one of the Singleton pastures joins the Graves pasture, don't you? A. It joins the two sections. Q. And the fence between the two is down much of the time? A. Yes, sir. Q. Well, the cattle, Singleton's cattle and Graves' cattle, pass back and forth more or less between the pastures? A. Yes, sir. Q. You remember the night that they got in there with the bunch of cattle? A. Well, I remember that night. Q. You remember there was such a night that they got there? A. That they say they did. Q. Don't you remember the next day these cattle—that night that they stampeded and the cattle scattered all over the country and tore the fence all down? A. Next night—next what? Q. The night after they got in, or the night they got in, or two nights before, or two nights after? A. They stampeded over there in the lane the first night and second night at the southeast corner, and the next night south. * * * Q. Do you know whether they scattered or not? A. Well, they were scattered; yes, sir. Q. How far did you trail a bunch the next day? A. I trailed them from the corner, from the southeast corner, southwest about a half

mile. Q. And then they rounded them up later on to get them back together, didn't they? A. Yes, sir. Q. You know in the rounding up of these cattle after they had scattered all over the country that this particular steer that you referred to got into the bunch that way? A. No, sir. Q. You know that he did not get into the bunch that way? A. No, sir."

Ernest Best, a witness for the appellant, testified that he inspected the herd driven from New Mexico to Texas, and there were about 250 animals in that herd. Nolan Standifer on his direct examination testified in behalf of the state as follows:

Q. Where was the steer when he roped him with reference to the other cattle? A. He was in the herd. Q. The same herd that you brought over there? A. I don't know whether he was in there when he brought him over there or not. Q. But I mean the herd; was it the same herd you brought there? A. That same herd was there, and some more cattle, too, was there."

It therefore conclusively appears that animals other than those driven in the herd from New Mexico to Texas were in the round-up from which the Vermillion animal was cut, just prior to the time it was branded by appellant. Now, when the erroneous impression of fact on this score set out in the former opinion is eliminated from a consideration of the facts in the case, the evidence to support the conviction must rest entirely upon the facts: First that the Vermillion steer became an estray in Chaves county in 1911 or 1912; second, that it was discovered on appellant's ranch in Texas almost two years thereafter; third, that it had been branded by appellant; fourth, that it was cut from a large herd of cattle, among which were cattle which had previously been driven from New Mexico, as well as cattle which were in the country immediately surrounding appellant's Texas ranch; and, fifth, that appellant not only refused to recognize the right of the Texas Cattle Association to take the Vermillion animal from his possession, but insisted that the animal was his property, by virtue of a sale to him made by some one in Lincoln county, N. M. The crucial fact which in the first instance led this court to believe that the circumstantial

proof of asportation of the Vermillion animal in New Mexico was sufficient to constitute substantial evidence, within the meaning of the rule, was that the Vermillion animal had been taken from the New Mexico herd to be branded by appellant. When this fact is eliminated, as it must be, because it is untrue, the facts clearly present a case where there is no substantial evidence to show that appellant ever had possession of the Vermillion animal in New Mexico or ever drove it from this state to Texas. Therefore we are compelled to reverse this case, with instructions to award appellant a new trial; and it is so ordered.

HANNA, J., concurs.

PARKER, J.—I dissent. I think there is substantial evidence of asportation authorizing the verdict.

[No. 1807, Jan. 12, 1915.]
[On Motion for Rehearing, May 1, 1916.]
DOW v. IRWIN.

SYLLABUS BY THE COURT.

1. In the absence of legislative authorization, public policy forbids the garnishment of moneys due the creditors of a county, whether the remedy by which it is sought to reach such funds is denominated legal or equitable.

P. 583

ON MOTION FOR REHEARING.

P. 597

Appeal from District Court, Chaves County; J. T. McClure, Judge.