[No. 3578. July 21, 1931.]

## LAS VEGAS INDEPENDENT PUB. CO. v. BOARD OF COUNTY COMMISSIONERS OF SAN MIGUEL COUNTY.

[1 Pac. (2d) 564.]

Thomas V. Truder, of Las Vegas, and Frank Faircloth, of Santa Rosa, for appellant.

C. N. Higgins and Charles W. G. Ward, both of Las Vegas, for appellee.

OPINION OF THE COURT

PARKER, J.

The county of San Miguel has appealed from a judgment obtained by the Las Vegas Independent Publishing Company, in the sum of $1,583.90, containing these provisions:

"It is further ordered that the collection of the sum of $512.82 be limited to delinquent taxes hereafter collected in said county, and the said defendant is hereby ordered and directed to apply to said judgment in satisfaction of said amount of $512.82, all delinquent taxes hereafter collected until said amount is satisfied, said amount to be so paid by delinquent taxes being that part of said judgment which represents $427.82 for office supplies for said county, and the sum of $85.00 formerly owned by the Santa Fe New Mexican Publishing Company and assigned to this plaintiff. The other part of said judgment, to-wit: $1071.08, is not limited in the collection thereof to delinquent taxes, but in addition to receiving payment thereon from delinquent taxes, plaintiff shall have whatever remedy is afforded in law or equity to enforce the same."

Defense was based upon the Bateman Act (1929 Comp. § 33-4241 et seq.), it being alleged in the answer that

"* * * All of the indebtedness alleged to be due from the defendant to the plaintiff were contracted during the current year 1928-1929, and that said sums of money so alleged to be due cannot be paid out of the money actually collected and belonging to that current year as the books of the treasurer of said San Miguel County now show the accounts from which said sums of money so alleged to be due are payable, it being over-drawn in the sum of approximately two thousand dollars, and that there are no funds belonging to that current year with which said alleged accounts can be legally paid, and that all of said indebtedness so alleged to be due is null and void."

The quoted portion of the judgment indicates that it is severable. Its two parts require separate consideration. The larger sum included was on an account for election supplies; the lesser was for office supplies. As to the latter, the objection here made is that the judgment requires all delinquent taxes to be applied first to the payment of that claim, regardless of the year of their levy

and of the rights of other creditors to a pro rata distribution. The language of the judgment is probably inadvertent. It seems plain that the Bateman Act was deemed applicable to that part of the judgment. By that act, appellee's right is limited to a pro ration with other creditors in the proceeds of delinquent taxes levied for the particular year in which the indebtedness was incurred. 1929 Comp. § 33-4244. Amicus curiae suggest the questions whether this provision of the Bateman Act has been modified by the transfer provision of the budget law (1929 Comp. § 33-5906), and how the two are to be harmonized. Decision of these questions at this time would be advisory. We deem it best to withhold it. The present record does not indicate that any transfers were made.

The important question in the case involves the sum awarded for election supplies furnished; as to which appellee was adjudged to have "whatever remedy is afforded in law or equity to enforce the same." Appellant contends that the fact that county funds for the current year had been exhausted, renders the claim void, under the Bateman Act, except as to the right of the claimant to participate in collections of revenue belonging to that year.

Other facts appear, however, upon which appellee relies to render the Bateman Act unavailable as a defense. These are that the approved, certified, and recorded estimates for the year in question, among nineteen specific items, contain one of $8,000 for "elections," and that, while the total revenues for the year had been expended and overdrawn, as alleged in the answer, there had been expended for elections some $3,000 less than the sum estimated and collected for that purpose. It is freely admitted in the briefs that the responsible county officers, in violation of the budget law (1929 Comp. § 33-5901 et seq.), had diverted to other purposes more than $3,000 of the moneys levied and collected for elections.

This presents the question whether one dealing with a county takes the risk, not only that the fund estimated and collected for the particular purpose may prove insufficient to satisfy his claim, but the risk that, by official act, but unlawfully, it may be diverted to other purposes.

The question has not been heretofore passed on by this court, and it is of large importance as affecting the administration of county finances.

■ While the budget act, passed in 1921, expressly provided that it should not be construed as repealing the Bateman Act, passed in 1897, it is evident, nevertheless, that it made important changes in county finances, and that the Bateman Act thenceforth operated upon a different system. This court has uniformly sustained that part of the Bateman Act providing that claims shall be void in event of exhaustion of funds for the current year, except as they may participate in future collections of revenue belonging to that year. Whether the rule would have been the same if it had appeared that the cause of exhaustion of funds was a robbery or embezzlement of them, it is now unnecessary to determine. It is interesting to note, however, that, as long ago as 1918, this court argumentatively assumed that judgments might be properly rendered against counties, and be properly payable, if

"there was money available out of the collections for the current year to pay the same, and such money had been lost or misappropriated by county officers."

James v. County Commissioners, 24 N. M. 509, 174 P. 1001, 1003.

In 1921, this court affirmed a judgment against Santa Fe county, based upon certificates of indebtedness issued to anticipate the proceeds of the special levy for highway purposes.

In that case, the levy realized sufficient money to satisfy the certificates, but the county authorities had "diverted" a large portion of it. In an opinion by former Justice Davis, referring to the Bateman Act as a defense in such a case, this court said:

"Here it is admitted that the income from the levy out of which these certificates were to be paid was more than sufficient to meet them. The county authorities, in violation of the plain duty to conserve this fund for the payment of these certificates, diverted it to other uses, and then say, when the certificates are presented, that they cannot be paid for lack of available funds. Such a contention does not appeal to a sense of justice, and is not sustained by the law. The misapplication of funds collected for the payment of these certificates cannot render them invalid."

Capital City Bank v. County Commissioners, 27 N. M. 541, 203 P. 535, 536.

Under the budget law, the $8,000, estimated and approved for elections in San Miguel county in 1928, was as completely dedicated to that purpose, as were the proceeds of Santa Fe county's special levy dedicated to payment of the certificates of indebtedness. It was as unlawful to divert the one fund as the other, and it would seem as unconscionable, in the one case as in the other, to hold a claim void because of misapplication of the fund provided for its satisfaction. In principle, Capital City Bank v. County Commissioners, supra, seems applicable.

Construing the Bateman Act and the budget law together, we are of the opinion that the provisions of the former now operate upon each of the several funds into which the revenues flow, as it formerly operated upon the single fund. This is fairer to those dealing with the county. Before entering into contracts with it, they may ascertain from the public records, with some degree of accuracy, whether there will be funds out of which they can be paid. But, if they cannot rely upon the integrity of these funds, the budget law will serve as a trap for the unwary.

Such amelioration of the condition of creditors was not accomplished at the expense of the counties. The budget act provides that county commissioners who allow and county treasurers who pay claims, in violation of the act, shall be liable to the county, and that recovery may be had against their bondsmen. 1929 Comp. §§ 33-5904, 33-5907. The proceeds of such judgment will replenish the fund so unlawfully depleted. This feature of the budget law aids the construction we here place upon the two acts. If it had not been intended that judgment should go against the county in such a case as this, the liability imposed on the commissioners and the treasurer should have been created in favor of the creditor; not in favor of the county. If the county were not liable to the creditor when the fund from which the latter should have been paid has been diverted to some other county purpose, we should have the peculiar situation that the county,

which had suffered no loss and probably had gained, might enforce the liability of the officials and their sureties, while the creditor, who alone had suffered the loss, would be without remedy.

We find no error in the judgment, except with respect to the application of delinquent tax collections to that portion of the judgment covering office supplies, as herein pointed out. For that error, the judgment will be reversed. The cause will be remanded, with a direction to enter a judgment so modified as to conform to the views herein set forth. As the error was apparently inadvertent, and as the objection here sustained does not seem to have been made below, no costs will be taxed against the appellee. It is so ordered.

WATSON and HUDSPETH, JJ., concur.

BICKLEY, C. J., and SADLER, J., did not participate.