GEORGE HAMPE, *Appellee*, v. AARON SAGE, *Appellant*.
No. 17,478.

SYLLABUS BY THE COURT.

1. CONTRACT—*"Memorandum in Writing"—Evidence—Statute of Frauds. Hampe ·v. Sage,* 82 Kan. 728, 109 Pac. 408, followed and *held,* that the amendment to the petition alleging that the land described in the memorandum which evidenced the contract between the parties was the only land in Pottawatomie county, Oklahoma, which the defendant owned or claimed to own or have an interest in, was sufficient to satisfy the provision of the statute of frauds which requires contracts for the conveyance of lands to be in writing.

2. ———— *Same. Held,* further, that evidence of statements and admissions of the defendant made shortly before the memorandum was executed, to the effect that he owned the land described therein and that he owned no other land in that county, was competent for the purpose of showing that in fact he owned and claimed to own no other tract of land in that county.

3. ———— *Same.* The fact that the lands described in the memorandum were Indian lands held in trust for the allottees, who were members of the tribe of Pottawatomie Indians, and that under an act of congress and the terms of the trust patents issued for said lands, any conveyance or contract with refer-

ence thereto is declared to be absolutely null and void, will furnish no defense to an action for damages for breach of a contract by the defendant to sell and convey such lands.

Appeal from Shawnee district court. Opinion filed July 6, 1912. Affirmed.

*Edwin A. Austin,* of Topeka, for the appellant.

*J. B. Larimer, A. M. Harvey,* and *J. E. Addington,* all of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Action for damages for the breach of a contract for the exchange of lands. The jury in answer to special questions found the value of the Oklahoma lands which the defendant agreed to convey to plaintiff, the value of plaintiff's land in Shawnee county, Kansas, which he was to convey to the defendant, and returned a general verdict in plaintiff's favor for the difference, amounting to $2647.66. Judgment was rendered thereon for the plaintiff and the defendant appeals.

A former judgment for the plaintiff was reversed on the ground that the petition was demurrable under the statute of frauds because the contract for the sale and exchange of the land was evidenced by a memorandum which failed to describe the Oklahoma land or to state any fact, beyond its acreage and the county of its location, which might help to identify it. (*Hampe v. Sage,* 82 Kan. 728, 109 Pac. 408.) In the opinion it was intimated that the petition would not have been demurrable if it had contained an allegation that the land referred to in the memorandum was the only land in that county owned by the defendant. After the cause was remanded, the plaintiff amended his petition as follows:

"Said tract of land was the only land in Pottawatomie county, Oklahoma, which said defendant then owned or claimed to own or have dominion over or con-

trol of, or in which he had or claimed to have any interest."

The defendant's answer, besides a general denial, alleged that at the time the memorandum was executed, the land described therein was, as plaintiff well knew, Indian land allotted and patented to members of the tribe of the Pottawatomie Indians and not to the defendant; and further pleaded an act of congress approved February 8, 1887, providing that any conveyance or contract made touching the said lands before the expiration of the period of twenty-five years mentioned in said patents and said act of congress, shall be absolutely null and void. The answer set out copies of the patents to the lands in question, and alleged that the twenty-five-year period from the date of the allotment and issue of the trust patents had not expired or been abrogated at the date of the alleged contract with defendant. The reply was an unverified general denial.

On the trial plaintiff proved by two real-estate agents of Topeka that defendant listed the Oklahoma land with them for sale. They produced the original entries in their books showing the description of the land with Sage marked as the owner, and testified that he dictated the description, read over the same and approved it; that he stated to them that he owned the land and would sell it at $20 an acre, and that it was the only land he owned or controlled in Oklahoma. The plaintiff proved that the defendant made similar statements to him on different occasions, and also to witness Hewins, who went to see the land a short time before the contract in question was entered into. The first claim of error is that this testimony should have been excluded, that it was an attempt by parol evidence to establish an essential element of a contract required to be in writing. It is argued that the memorandum does not say that the land referred to was that listed with these real-estate agents or that referred to in the conversations to which the witnesses were permitted to

testify. In support of this contention the former opinion is relied upon wherein it was held that to allow the land to be identified by proof that the defendant had showed to plaintiff a certain tract of land in Pottawatomie county, Oklahoma, containing 760 acres, and that this was the land referred to in the memorandum, would be the same as to permit an essential element of the contract to be supplied by parol; that while it is always competent to offer parol evidence to identify the description, it is never admissible for the purpose of supplying a description which the parties have omitted from the writing. This statement of the law was made in answer to plaintiff's contention on the former hearing that the defect in the petition was cured by alleging and proving that defendant, previous to the execution of the memorandum, had showed him a certain tract in Pottawatomie county, Oklahoma, containing the acreage mentioned, and that this was the land referred to in the memorandum. It was held that proof of this character would have been admissible and sufficient to render the contract definite, provided the memorandum itself, after the reference to the Oklahoma land, had contained the words "being the tract recently showed by Sage to Hampe." (*Hampe v. Sage,* supra, 731.)

The contention that the court erred in the admission of testimony showing statements and admissions made by Sage to the effect that he owned this tract of land and that it was the only land in Pottawatomie county, Oklahoma, that he did own or claim to own or control, the contention that the court erred in refusing to sustain the demurrer to plaintiff's evidence, as well as most of the other contentions raised by the defendant, are met and fully answered in the former opinion. It was there said:

"Under the authorities cited, a recital that Sage owned the land which he undertook to convey can be found in the contract itself, by a liberal interpretation

of its terms. Proof that he owned no other land in that county would then render the description, as so interpreted, absolutely definite." (*Hampe v. Sage*, 82 Kan. 728, 733, 109 Pac. 408.)

That Sage owned the land he undertook to convey may by a liberal interpretation of the terms of the memorandum be found in the writing itself. All that was necessary to make the position good as against a demurrer was to plead the fact that he owned or claimed to own only the stated number of acres in that county. The plaintiff amended his petition by so alleging. On the trial proof that defendant owned or claimed to own that number of acres and no more in Pottawatomie county, Oklahoma, was all that was necessary to render the description of the land which the parties had in mind, and about which they negotiated, absolutely definite. The defendant's statements made at or about the time the contract was entered into were admissible as proof that he claimed to own land of that acreage so situated and that he owned no other land in that county. Proof of his statement that in fact he owned this land could not hurt him because the memorandum itself is to be interpreted as so stating.

Another contention of the defendant is that since the unverified reply admitted the issue of trust patents for these lands and the provision of the act of congress declaring any conveyance or contract with reference to such lands absolutely void, there was an utter failure of proof showing that Sage owned the lands, and, on the contrary, an admission that he could not possibly own or convey them. In the brief it was said:

"This clause in the Act of Congress, of course, does not directly apply to any contract made with George Hampe by Aaron Sage, but it does apply to any conveyance or contract made by the allottee members of the Pottawatomie tribe to whom this land was patented, and by disqualifying them from conveying or contracting to convey to another, renders it apparent that Aaron Sage was not the owner of any of this particular

land, and not only nullifies any conveyance and contract he may have obtained from the Indian allottees, but nullifies, as against them, any contract he may have made with George Hampe."

The defendant argues that it was incumbent· upon plaintiff to offer some proof to show that the twenty-five-year period during which these lands were not subject to sale or contract had expired; that for the purpose of satisfying that provision of the statute of frauds which requires contracts in reference to the sale of lands to be in writing it was competent for the plaintiff to prove that the defendant in fact owned this land and in fact owned no other land in that county, but that plaintiff failed to satisfy the statute of frauds for· the reason that he failed to prove that defendant in fact owned this land, while on the contrary the pleadings as they stood showed conclusively that he never did own it. But it has been repeatedly held that a person may contract to sell and convey lands of which he is not the owner and may become liable for damages for the breach of such contract. (*Trust Co. v. McIntosh,* 68 Kan. 452, 462, 75 Pac. 498; *Krhut v. Phares,* 80 Kan. 515, 103 Pac. 117; *Robertson v. Talley,* 84 Kan. 817, 820, 115 Pac. 640.) In the last case it was ruled:

"One may bind himself personally by an agreement to furnish a deed to land owned by another, even when he has no present interest therein and no means of compelling a conveyance." (Syl. ¶ 1.)

In the opinion it was said:

"No reason is apparent why he may not bind himself personally by a contract that he will procure a deed to land, although he is not certain that he will be able to do so, thereby incurring liability for damages if he shall fail, and for loss by the bargain if he shall be compelled to pay more for the property than he is to receive." (p. 820.)

The answer alleges that the lands referred to in the petition were patented to Indians of the "Citizen Pot-

tawatomie Tribe or Band," under an act of congress approved February 8, 1887, which declares that any conveyance or contract made touching the said lands before the expiration of the period of twenty-five years· mentioned in said patents shall be absolutely null and void, and that the twenty-five-year period from the date of the allotment and trust patent had not expired and had not been abrogated at the date of the alleged contract sued upon. The appellee calls attention to two subsequent acts of congress which, it is· claimed, gave to the Citizen Pottawatomie Indians the right to sell their lands under certain conditions. The first of the later acts provides:

"That any member of the Citizen Band of Pottawatomie Indians and of the Absentee Shawnee Indians of Oklahoma, to whom a trust patent has been issued under the provisions of the Act approved February eighth, eighteen hundred and eighty-seven (Twenty-fourth Statutes, three hundred and eighty-eight), and being over twenty-one years of age, may sell and convey any portion of the land covered by such patent in excess of eighty acres, the deed of conveyance to be subject to approval by the Secretary of the Interior under·such rules and regulations as he may prescribe, and that any Citizen Pottawatomie not residing upon his allotment, but being a legal· resident of another State or Territory, may in like manner sell and convey all the land covered by said patent, and that upon the approval of such deed by the Secretary of the Interior the title to the land thereby conveyed shall ·vest in the grantee therein named." (28 U.. S. Stat. at Large, p. 295.)

The second of the later acts provides:

"That the proviso to the Act approved August˙ fifteenth, eighteen hundred and ninety-four, permitting the sale of allotted lands by members of the Citizen Band of Pottawatomie Indians and of the Absentee Shawnee Indians of Oklahoma is hereby extended so as to permit the adult heirs of a deceased allottee to sell and convey the lands inherited from such decedent; and if there be both adult and minor owners of such inherited lands, then such minors may join in a sale

thereof by a guardian, duly appointed by the proper court, upon an order of such court made upon petition filed by such guardian, all conveyances made under this provision to be subject to the approval of the Secretary of the Interior; and any Citizen Pottawatomie or Absentee Shawnee not residing upon his allotment, but being an actual resident of another State or Territory, may in like manner sell and convey all the land allotted to him." (31 U. S. Stat. at Large, p. 247.)

It is apparent from these subsequent statutes that the Citizen Pottawatomie Indians were given the right under certain conditions to dispose of their lands; and while the subsequent acts of congress do not in terms abrogate the inhibition against the validity of contracts for the sale of such lands declared in the act of 1887, it seems obvious that when the allottee was permitted to sell his lands, any contract made by others in relation thereto would not be void. There was no allegation in the answer nor any proof offered that the allottees had not acquired the right to dispose of these lands under the conditions and provisions of the later acts of congress. We do not rest our decision, however, upon the effect of the acts of 1894 and 1900. Under the authorities cited, *supra*, we hold that the defendant is liable in an action for damages for the breach of his contract to sell and convey the lands in question although he may have had no present interest therein and no means of compelling a conveyance at the time he entered into the contract.

It was not incumbent upon the plaintiff to offer proof that the defendant in fact owned the lands referred to in the contract or that the twenty-five-year period in which they were not subject to sale had expired. All that was required was to offer proof for the purpose of identifying the land that was attempted to be described in the memorandum in order to show what land the parties intended and thus to satisfy the statute of frauds. This does not mean that the plaintiff would be permitted to state what his under-

standing was as to the land intended, or that oral testimony in such cases is admissible for that purpose. Where the petition alleges that the tract of land attempted to be described is all the land in the county mentioned which the person who agreed to convey the land at that time owned or claimed to own, and that there was no other land in that county which he owned or claimed to own, except that attempted to be described in the contract or memorandum, the statute of frauds is satisfied by a proof of these facts. (*Bacon v. Leslie,* 50 Kan. 494, 31 Pac. 1066; *Hampe v. Sage,* 82 Kan. 728, 109 Pac. 408, and authorities cited.) The evidence of defendant's admissions was competent and the demurrer to the evidence was rightly overruled. For the same reason the court properly refused to permit the defendant to show that in fact he had no title to the lands in question.

Complaint is made that the court should have permitted the defendant to offer oral testimony to the effect that the written contract did not express the agreement of the parties; that both parties intended merely to make a proposition which either had the option to accept or refuse. It hardly seems necessary to cite authorities to show that the admission of evidence of this character would have been to vary and contradict a written contract by parol and that the court rightly rejected it and refused the instructions and special questions in respect thereto.

Interest on the amount of damages was properly allowed from the time when the contract was breached, which would ordinarily be, in cases of this character, when plaintiff tendered performance. In this case the deed was tendered by plaintiff at the time the action was commenced. (*Craft v. Bent,* 8 Kan. 328; *Stebbins v. Wolf,* 33 Kan. 765, 771, 7 Pac. 542.)

The judgment is affirmed.

BENSON, J. (dissenting) : It was held in the former opinion in the absence of an allegation that the tract referred to in the contract was the only land of the vendor in the designated county an averment that it was so in fact was insufficient. It was said that to allow proof that the land had been so identified would be to permit an essential element of the contract to be proved by parol evidence. For the same reason proof that the vendor had stated to the agents that it was the only land he owned in the county was insufficient for there was no allegation in the petition that he had made such statements. Besides, no connection was shown between the agency and the contract in question. The statements to the same effect made to the vendee were parts of conversations occurring three or four weeks before the contract, and they were not referred to in any manner when the contract was executed.

It has been held that parol evidence of a previous oral agreement which is the only means of identification referred to in the memorandum can not be taken into consideration to complete it. (*Whelan v. Sullivan*, 102 Mass. 204.) If an actual agreement is insufficient it can not be that mere conversations referring to a possible or even contemplated agreement are sufficient to identify the subject matter in a contract afterwards made, especially in the absence of any reference thereto, either in the contract, or at the time of its execution.

In the same conversation between the parties relied upon to prove the necessary identification, the vendee was informed that the tract was Indian land for which a patent had not been issued. Ownership in the government and the absolute restriction upon alienation were matters of public law. At the time therefore when the vendee was informed that this tract was the only land of the vendor in the county he had notice of the fact that it could not be conveyed by anyone—that it was

not the subject of private ownership. Parol proof of this nature is allowed to identify the land only because it may be presumed that a person intends to convey that which he owns. In view of the mischiefs to be avoided by the statute of frauds proof strictly within the rule is hazardous enough. It should not be stretched to include that which the vendor only claims, but which the other party knows he can not convey.

The contract was void because so declared by paramount law. The government owned the land and prescribed the conditions. It stipulated with the Indian to hold the title in trust for him for twenty-five years and declared that any previous contract to convey should be void. Damages can not be recovered for breach of a void contract. It is contrary to public policy to attempt to obtain that which the government as guardian for the Indian is holding for his benefit, and no court should directly or indirectly lend its aid to a connivance to that end.

The provision made by a subsequent statute for the issuance of patents in fee simple afterwards upon certain conditions, emphasizes the original restrictions. The act of 1906 declares "and thereafter (after patents in fee simple are issued on the conditions prescribed) all restrictions as to sale . . . shall be removed." (34 U. S. Stat. at Large, p. 183.) It is difficult to understand how this language can be interpreted to make a contract—declared by the former act to be void —to be nevertheless valid and enforceable.

While preliminary patents were authorized to be issued to allottees of these trust lands they were only certificates of the trust entirely in harmony with and intended to give effect to the declaration of the statute that any conveyance of the land or any contract touching the same before the expiration of the time mentioned shall be absolutely null and void. (*United States v. Rickert*, 188 U. S. 432.) Subsequent legislation does not assume to give life to that which

never had life.   (*Lewis et al. v. Clements,* 21 Okla. 167, 95 Pac. 769; *Simmons et al. v. Whittington,* 27 Okla. 356, 112 Pac. 1018; *United States v. Dooley,* 151 Fed. 697.)

Contracts which provide for anything directly prohibited by law or public policy are void.   (2 Parsons on Contracts, 9th ed., p. 907.)

This is not a new doctrine in this court.   In *Vickroy v. Pratt,* 7 Kan. 238, in an action by one citizen against another on a promissory note given for Indian land, it was held that "A note given by one citizen of the United States to another, for the sale and delivery of possession of a tract of land to which the Indian title has not been extinguished, is void."   (Syl.)

It was held in *Brake v. Ballou,* 19 Kan. 397, that a parol contract concerning the purchase and conveyance of lands belonging to the United States made in violation of the spirit of the federal laws and in fraud thereof can not be enforced specifically or otherwise. It was said in substance that although no fraud upon the government was intended it was nevertheless fraudulent to attempt to procure the title from the government in violation of its laws.

In an action to foreclose a mortgage upon Indian land it was said:

"And it really makes no difference whether the land in controversy, at the time it was mortgaged, belonged absolutely to the Indians, or was held in trust by the government of the United States for the Indians. In either case the mortgagor had no interest in the land at the time he mortgaged it, and therefore the mortgage was void.   (*Lucas v. Sturr,* 21 Kan. 480, 483.)

In an action upon a note given for a tract of Osage ceded land this court said:

"The contract between the plaintiff and defendant was illegal and void, and the note was given without any sufficient consideration.   After the defendant purchased the land, or the claim thereto, from the plaintiff, he had no right to go upon it, and if he had done so,

he would have been a trespasser." (*Jarvis v. Campbell,* 23 Kan. 370, 371.)

Mr. Chief Justice Johnston and Mr. Justice Smith concur in this dissent.