[No. 2175, Aug. 27. 1918.]

# JAMES v. BOARD OF COMMISSIONERS OF SOCORRO COUNTY.

## SYLLABUS BY THE COURT.

1. A question not raised in the trial court will not be considered on appeal.                    P. 512

2. The Bateman Act (sections 1227-1233, inclusive, Code 1915) was not repealed by chapter 108, Laws 1909 (section 1339, Code 1915).        P. 512

3. It is a rule of statutory construction that repeals by implication will not be favored, and that where two statutes can be construed together, and preserve the objects to be attained by each, they should be so construed.    P. 513

4. Chapter 108, Laws 1909, by conferring the right upon counties to levy a tax for the payment of judgments obtained for current expenses, did not authorize the rendition of such judgment, and thus operate to repeal the Bateman Act.
                                    P. 514

5. It is proper to consider the origin and history of the law, the prior condition of the law, and the general policy and course of legislation. There are few guides to construction more useful than that which directs attention to the prior condition of the law to aid in determining the full legislative meaning of any statutory change thereof.
                                    P. 515

6. The Bateman Act was not repealed by the act fixing salaries for county officers (chapter 12, Laws 1915).    P. 516

Appeal from District Court, Socorro County; Mechem, Judge.

Action by Emil James against the Board of Commissioners of Socorro county. Judgment for defendant, and plaintiff appeals. Affirmed.

JAMES G. FITCH, of Socorro, for appellant.

HARRY P. OWEN, of Los Lunas, and R. P. BARNES, of Albuquerque, for appellee.

### OPINION OF THE COURT.

ROBERTS, J. Appellant was sheriff of Socorro county for the years 1912 to 1915, inclusive. This action was instituted by him against the board of county commissioners of said county for balance alleged to be due for the salaries of himself and deputies, necessary and authorized expenses of his office, salaries for jailer and guard, cost of feeding prisoners, etc. The amounts due and owing were set forth in the complaint, and it was alleged that accounts for same had been presented to the board of county commissioners as required by the law. Judgment was prayed for a total of $3,564.11, and that the board of county commissioners be required to levy taxes for the payment of the judgment.

The appellee filed a demurrer to the complaint, which was overruled, after which it answered, admitting the allegations of fact in the complaint, but denied its liability, alleging in substance that appellant's pro rata share of moneys collected from the tax roll for county purposes "due and payable within and for the year 1916, excepting from assessments for special and other purposes," had been paid and apportioned among and distributed to the payment of the services, salaries, and accounts due sheriff * * * for said years and the quarters thereof." The answer further denied that appellee had in its hands any money applicable to the payment of plaintiff's claim, and alleged that the liability

·of appellee to appellant was only and solely as to his due proportion as compared with other like creditors upon the delinquent taxes, which could or should in law be applied on collection to the payment pro rata of appellant and other creditors. Appellant demurred to the answer on the ground that the facts pleaded did not constitute a defense in this:

"That the facts that all moneys collected from the tax rolls for county purposes, and due and payable within and' for the year 1916, except money for special purposes, has been apportioned and distributed pro rata in paying services, salaries, and accounts of plaintiff and other persons, and the defendant has not now any money in its hands from the collection of taxes due and' payable to defray the current or other expenses for the year 1916, which could or should be, in law, applied to the payment of defendant's indebtedness to plaintiff, as set forth in plaintiff's complaint herein, did not render said indebtedness void, nor in any manner preclude plaintiff from obtaining judgment against defendant as prayed for in his complaint."

The demurrer was overruled, and, appellant declining to plead further, judgment was rendered for the appellee.

The propriety of the action of the court in overruling the demurrer depends upon whether or not the Bateman Act (sections 1227-1233, inclusive, Code 1915) is in full force and effect and applies to such claim. These sections were originally enacted by the legislature in 1897 (laws 1897, c. 42). The purpose of the act was to require counties, cities, towns, and school districts to live within the annual income provided for such municipal corporations. It provided that each year should pay its own debts out of the taxes collected for that year and that, if there was an insufficient amount of money collected during any current year with which to pay for the services, fees, and salaries of the county officers, then said officers and all creditors of the county should receive in full payment of their claims their pro rata shares of the money collected; the pro rata payments to be made quarterly. The act further declared void any indebtedness which could not be paid

according to the provisions of the act. Section 1229, or rather the proviso of such section, provided that all of the actual expenses for boarding county prisoners should be paid in full before any bill, fees, or salaries were paid, and before any pro rata distribution was made among the creditors of the county. If these sections yet remain in full force and effect, concededly under the pleadings in this case the court properly overruled the demurrer to the answer.

[1] Appellant argues that in any event he was entitled to be paid in full that portion of his claim for boarding prisoners. He is correct in this contention under the statute; but no such question was raised in the trial court, and it will not be considered here. This constitutes but a small item in plaintiff's claim, and in the district court he was seemingly content to rest his case upon the question as to whether or not the Bateman Act was in full force and effect, and upon theory that it was the demurrer was overruled. In this court appellant will be held to this theory, and other questions which he now seeks to raise will not be considered. Cadwell v. Higginbotham, 20 N. M. 482, 151 Pac. 315.

[2] Appellant contends that the Bateman Act was repealed by chapter 108, Laws 1909 (section 1339, Code 1915). The first section of this act reads as follows:

"When any final judgment has been or may be rendered against any county, on account of any current expenses of such county, the board of county commissioners at the time of making the first annual levy thereafter in such county may, in their discretion, cause to be levied and collected and may make such levies and collections annually thereafter until a sufficient tax to pay such judgments and costs of suit shall have been levied and collected: Provided, that such levy shall not exceed two mills upon each dollars of taxable property for any one year and the proceeds from such levy shall be kept separate and apart from other county funds and credited to a fund to be known as the judgment fund. And the moneys colected hereunder shall not be used for any purpose except as hereinbefore provided and no levy shall be made except where such judgments are outstanding."

Section 2 of the act authorizes boards of county commissioners, where the indebtedness of such county did not exceed four per centum of the value of the taxable property to issue bonds in exchange for the payment of the valid, subsisting, and outstanding judgments owed by such county. The remaining sections of the act provide for the denomination of the bonds, etc., and the levy of the taxes to pay the same.

Appellant contends that this act, by recognizing the right to obtain judgments against counties for current expenses, and a portion of the salaries of county officers at that time being payable out of moneys raised by taxation, and the act in question providing for tax levies in subsequent years for the payment of such judgments was necessarily repugnant to and in conflict with the sections of the Bateman law invalidating such indebtedness.

[3] It is a rule of statutory construction that repeals by implication are not to be favored, and that where two statutes can be construed together, and preserve the objects to be obtained by each, they should be so construed. Territory v. Riggle, 16 N. M. 713, 120 Pac. 318. In the case referred to the court quoted with approval from the case of Territory v. Digneo, 14 N. M. 157, 103 Pac. 975, as follows:

"It is well settled that repeals by implication are not to be favored. And where two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable the duty of the court—no purpose to repal being clearly expressed or indicated—is, if possible, to give effect to both. In other words, it must not be supposed that the Legislature intended by a statute to repeal a prior one of the same subject, unless the last statute is so broad in its terms, and so clear and explicit in its words as to show that it was intended to cover the whole subject, and therefore to displace the prior statutes. One statute is not repugnant to another unless they relate to the same subject and are enacted for the same purpose. It is not enough that there is a discrepancy between different acts on the same specific subject. When there is a difference in the whole purview of the two statutes apparently relating to the same subject, the former is not repealed. Such is the general doctrine in which all the cases concur."

Thus it will be seen that it is the duty of this court to so construe both statutes as to give effect to both, if it can be done without contradiction or repugnancy or absurdity or unreasonableness. Bearing this rule in mind, we will consider the two statutes and determine whether they are necessarily repugnant to each other, and the former one repealed thereby. The Bateman Act, as we have said, was designed to require municipalities to live within their annual incomes, and in order to accomplish this result it required the pro rating of the money of the current year toward the payment of claims for salary and other current expenses. The object in view by the legislature was to prevent public officials from piling up indebtedness which the taxpayers would be required to pay.

[4] Appellant's argument is that, because the act of 1909 provided that, when any final judgment was rendered against any county for current expenses, it should be paid by the levy of taxes, the legislature necessarily recognized the right of a court of competent jurisdiction to render judgment against a county for salary or expenses beyond the amount of money collected by the court for the current year in which the salary was earned or the expenses incurred. We are not able to agree with this contention, and we think a consideration of the state of the law prior to the enactment of this statute will show that this was not the legislative purpose. Section 1155, Code 1915, which was enacted by the legislature in 1876 (chapter 1, Laws 1876) reads as follows:

"When a judgment shall be rendered against any board of county commissioners of any county, or against any county officer in an action prosecuted by or against him in his official name, where the same shall be paid by the county, no execution shall issue upon said judgment, but the same shall be levied and paid by tax as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor."

In 1903 a case came before the territorial Supreme Court (Railroad Co. v. Territory, 11 N. M. 669, 72 Pac. 14), in which case three railroad companies sought to enjoin the collection of certain taxes in Grant county for the payment of certain judgments, which judgments were rendered upon claims constituting a part of the current expenses of said county for the years 1895-97. The special levy was excess of the statutory limit of 2½ mills for county current expenses and a half of one mill for deficit. In that case the court held that it would look behind the judgment to ascertain whether the claim was legally payable out of the taxes sought to be levied, and held that it was not, and that the taxes in question were invalid and enjoined the levy of the same. It will thus be seen that there was, at the time the act of 1909 was passed, a judgment outstanding against at least one of the counties of the territory on account of current expenses, and the court had held that there was no authority to levy a tax for the payment of the judgment. The act of 1909 provided that, when any final judgment has been or may be rendered against any county, etc., thus clearly evidencing an intention to take care of judgments theretofore rendered, as well as such as might be rendered thereafter. This statute, we do not believe, authorized a rendition of judgments against counties for current expenses, and did not validate or undertake to validate claims for current expenses in excess of the current funds available.

[5] In Lewis' Suth. Stat. Const. § 471, the author says:

"It is proper to consider the origin and history of the law, the prior conditions of the law, and the general policy and course of legislation. 'There are few guides to construction more useful than that which directs attention to the prior condition of the law, to aid in determining the full legislative meaning of any statutory change thereof.' "

It was probably true that in different counties of the territory at the time of the enactment of the statute of 1909 there were judgments outstanding against the

various counties, with no authority existing to levy a tax for the liquidation of the same; and it is possible that, subsequent to the enactment of the Bateman law, there may have been judgments rendered against counties for current expenses which were properly rendered and justly payable, because there was money available out of the collections for the current year to pay the same, and such money had been lost or misappropriated by county officers, and it was the design of the legislature to take care of such claims, or judgments might have been erroneously rendered against counties, but such judgments had become final, and not subject to review upon appeal, and the legislature deemed that it was wise and expedient, in order to sustain the credit of the counties, to liquidate such judgments. But, whatever motive prompted the legislature in the enactment of the statute, we do not believe that it was its design to repeal the Bateman act by the act of 1909, and so hold.

[6] Appellant further argues that the salary bill (laws 1915, c. 12), by providing a new fund for the payment of county officers and for the payment of any deficiency, is also in conflict with and repugnant to the provisions of the Bateman act, and constitutes either a repeal of those provisions or a recognition on the part of the legislature that they had already been repealed by the act of 1909. Prior to the adoption of the state constitution, many of the county officers were paid on what is known as the fee basis. Some of the officers, however, received a salary, and others received partial compensation in the form of salary. The constitution required all officers to be placed on a salary basis, and prohibited them from receiving any other fees or emoluments of office. In 1915 the legislature enacted a county salary law applicable to the officers elected at the first state election. The act in question created a county salary fund, and provided for the turning in to this fund by the county treasurer of money received from various sources. Section 14 of the act provided for the

payment of salaries of county officers quarterly out of this fund. Section 15 reads as follows:

"Should the county salary fund at any time be insufficient to pay the salaries and expenses provided for to be paid therefrom, or any part thereof, the deficiency shall be paid from the current expense fund, which fund shall be reimbursed to the extent of any deficiency so paid as soon thereafter as funds shall be available in the county salary fund. Any surplus remaining in said county salary fund at the end of any calendar year may be transferred to the credit of the county road fund or current expense fund upon order by the county commissioners."

By this section we think it is apparent that the legislature recognized that there might be temporary deficiencies in the county salary fund, and simply provided that in such cases, if there was money in the current expense fund, the deficiency should be paid out of the current expense fund, subject to reimbursement from the salary fund upon moneys becoming available therein. A large portion of the salary fund was made up from fees earned by officers under existing laws. These necessarily would come in irregular amounts. But the fact that the county treasurer was authorized to pay the deficiency in county salaries for any quarter out of the current expense fund does not, in our judgment, tend to indicate an intention on the part of the legislature to repeal the Bateman act. Under the Bateman act the county officer was entitled to pro rate with the creditors of the county in the moneys collected for the current year, and the mere fact that the legislature had created a salary fund, made up of certain moneys, and provided that in the event of a deficiency money should be transferred to such fund from the current expense fund, would not indicate an intention on the part of the legislature to pay the salaries of the county officers, regardless of the moneys collected during the current year. We think such officers would still be entitled to pro rate with the creditors of the county in the moneys collected for the current year, and the mere fact that the legislature had created a salary fund, made up of

certain moneys, and provided that in the event of a deficiency money should be transferred to such fund from the current expense fund, would not indicate an intention on the part of the legislature to pay the salaries of the county officers, regardless of the moneys collected during the current year. We think such officers would still be entitled to pro rate with the creditors of the county for the current year, as authorized by the Bateman act. There is no inconsistency between the provisions of the two acts in this regard.

Some contention is made to the effect that the answer was insufficient, because it should have alleged that it was money collected from the 1915 tax roll, and not from the 1916 tax roll, as set forth, which was available to pay plaintiff's claim for the last two quarters of 1916. This question, however, was not raised in the trial court. There appellant stood squarely upon the proposition that the Bateman act had been repealed, and this is the only question properly before this court. The allegation as to the year was evidently a clerical error, and the trial court undoubtedly so considered it.

For the reason stated, the judgment will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.