362 P.2d 991

R. A. BOSWELL, d/b/a Service Electric Company, Plaintiff-Appellee,

v.

RIO DE ORO URANIUM MINES, INC., and W. Rodney De Villiers, Defendants-Appellants.

No. 6804.

Supreme Court of New Mexico.

June 23, 1961.

R. F. Deacon Arledge, Charles Driscoll, Albuquerque, for appellants.

Sutin & Jones, Albuquerque, for appellee.

NOBLE, Justice.

Action was brought by appellee against appellant and W. Rodney De Villiers, president of appellant corporation, for breach of a contract to purchase a generating plant. Upon showing that De Villiers was acting throughout as agent of the company the action against him was dismissed. The case was tried to the court without a jury and a judgment for lost profit and expenditures was rendered in favor of appellee.

Briefly, the facts necessary to a determination of this appeal are that De Villiers met appellee, Boswell, in Oklahoma and discussed his need for a generating plant for appellant's mining operations. Appellee knew of such a plant for sale in Lancaster, Missouri. De Villiers on April 16, 1956, upon receiving a favorable report on the plant by electricians, made a verbal agreement whereby appellee was to buy the plant and dismantle it at appellee's expense ready for shipment and appellant agreed to pay him $18,650 within ten days. On the same day appellee agreed to buy the plant from its owner for $8,200, payment to be made in full within ten days. Appellant failed to make payment within that time and requested appellee to try to secure an extension of time from Sebastian Diesel Equipment Company, owner of the plant. The owner required a down payment of $2,750 for an extension, that was paid by appellee from the proceeds of a bank loan of which De Villiers knew, he having gone to the bank with appellee when the loan was obtained. The payment was made and an extension procured. De Villiers, as president of appellant corporation, hoped to interest an adjoining mining company, of which Alva Simpson, Jr. was president, in buying an interest in the generating plant for joint use by the two mining companies and on April 20, 1956 wrote Simpson describing the equipment in detail and the essential terms of the purchase agreement. Appel-

lant failed to complete the purchase or make any payment within the period of the extension and the owner of the equipment sold it to another retaining the $2,750 down payment made by appellee.

Appellant complains first that the agreement between it and appellee, being oral and within the Statute of Frauds, was not established by the quantum of proof necessary to prove an oral agreement. It is insisted that the evidence must be more than a preponderance, but rather that it must be clear, convincing and unequivocal to establish an oral contract within the Statute of Frauds especially where estoppel is invoked against appellant, as here. Paulos v. Janetakos, 41 N.M. 534, 72 P.2d 1, relied upon by appellant is not controlling and is distinguishable upon its facts. The action there was one in equity to enforce an alleged oral executory agreement to devise real property in exchange for personal services. We have found no decision requiring the quantum of proof contended for by appellant in cases of the sale of personal property and none have been cited. We have examined the record and conclude that the finding that appellee and appellant entered into an oral agreement for the purchase and sale of the electric generating plant is supported by substantial evidence.

It is next urged that the contract, being oral, is unenforceable as being within the Statute of Frauds and is not evi-

denced by a memorandum in writing signed by the party to be charged sufficient to satisfy the statute. The English Statute of Frauds and Perjuries (29 Charles II, C. 3) has been adopted in this state. Pitek v. McGuire, 51 N.M. 364, 184 P.2d 647, 1 A.L.R.2d 830.

Appellant urges for the first time by its reply brief that this transaction is governed by the Oklahoma Statute of Frauds. The Oklahoma statute was not pleaded nor does it appear that it was called to the attention of the trial court. We have heretofore said that in the absence of pleading and proof to the contrary, the law of a sister state is presumed to be the same as the law of the forum. Carron v. Abounador, 28 N.M. 491, 214 P. 772; Norment v. Turley, 31 N.M. 400, 246 P. 748. However, we are cognizant of our subsequent Rule of Civil Procedure 44(d) (§ 21–1–1(44) N.M. S.A. 1953 Comp.) which reads in part:

"The courts of the state of New Mexico shall take judicial notice of the following facts:

\*      \*      \*      \*      \*      \*

"(3) \* \* \* the laws of the several states and territories of the United States, and the interpretation thereof by the highest courts of appellate jurisdiction of such states and territories."

While the rule has not been construed in this jurisdiction, it is almost identical in language and clearly has the same

intent and meaning as the Uniform Judicial Notice of Foreign Law Act. 9A U.L.A. p. 318. Those states adopting the Uniform Act and which have construed it, generally hold that the judicial notice required merely relieves the making of formal proof of foreign laws but that it was not intended to remove the necessity of at least informing the court of such foreign law or statute and of presenting it when relied upon for recovery or defense. Revlett v. Louisville & N. R. Co., 114 Ind.App. 187, 51 N.E.2d 95, 500; Kingston v. Quimby, Fla., 80 So.2d 455; Bates v. Equitable Life Assur. Soc., 27 Tenn.App. 17, 177 S.W.2d 360; Annotation 23 A.L.R.2d 1437 §§ 10, 13. Compare, Scott v. Scott, 153 Neb. 906, 46 N.W.2d 627, 23 A.L.R.2d 1431.

■■■ While we are authorized under the rule to take judicial notice of the statutes of other states and their construction by the highest courts of appellate jurisdiction we will do so only where such statute has been presented to the trial court and where error is asserted because the trial court failed to judicially notice or follow such foreign statute, or where it is necessary for us to take judicial notice of the statute of another state upon which a decision of that state, relied upon, is predicated. Furthermore, appellant has not pointed out any essential difference between the English Statute of Frauds and the Oklahoma statute which would require a construction different than under our law.

■■■ An oral agreement within the Statute of Frauds is unenforceable unless there be a memorandum in writing sufficient to satisfy the statute. We quoted the following from Restatement, Contracts § 207, in Pitek v. McGuire, supra, 51 N.M. at page 371, 184 P.2d at page 651, as the essentials of a memorandum of a verbal contract to satisfy the Statute of Frauds:

> "A memorandum, in order to make enforceable a contract within the statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (a) Each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (b) the land, goods, or other subject-matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

The trial court concluded:

> "That a sufficient memorandum of this agreement was executed by defendant to take the agreement out of the Statute of Frauds."

Appellant objects and urges as error the fact that the trial court found the written memorandum to consist of a letter from

appellant to Alva Simpson, Jr. dated April 20, 1956, and asserts that this letter fails to satisfy the requirement of such a memorandum because (1) it fails to name or identify appellee as the other party to the agreement, and (2) it was a letter written to a third person.

■ A writing need not be addressed to the other party to constitute a memorandum sufficient to satisfy the Statute of Frauds. Pitek v. McGuire, supra; Dondero v. Turrillas, 59 Nev. 374, 94 P.2d 276. Admittedly the letter from appellant to Simpson lacks the essential element of naming or describing the other party to the contract. In other respects it is a sufficient memorandum. Appellee, however, relies upon an invoice from appellee to appellant dated April 16, 1956 and a letter dated June 20, 1956 from appellant to appellee, together with the letter from appellant to Simpson, as satisfying the requirements of a written memorandum.

■ A memorandum sufficient to satisfy the Statute of Frauds need not be contained in a single writing but may consist of several writings if (1) each writing is signed by the party to be charged and they indicate that they relate to the same transaction, or (2) if only one writing is signed by the party to be charged and "it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings." Restatement, Contracts § 208; Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551; Johnson v. Elliot, 123 Mont. 597, 218 P.2d 703; Fleming v. Strayer, 163 Pa.Super. 607, 63 A.2d 122; 2 Williston on Contracts § 582 at 1678 and cases cited in pocket part. Compare, Pitek v. McGuire, supra.

Appellant argues, however, that even if all the writings are considered together as the memorandum—what it terms the "connected memorandum principle"—they are nevertheless insufficient because none of the separate writings identifies any other writing.

■ When we examine the writings it is found that the invoice describes the goods in detail, describes the terms of the purchase and sale agreement with particularity, and the parties thereto. The invoice was not signed by appellant, but the letter from appellant to Simpson, written shortly after the invoice, described the property and the terms of the purchase and sale in the same detail as the invoice. It is apparent from an examination of the two writings that the signed letter to Simpson was written and signed with reference to the unsigned invoice. The two examined together contain all the essential terms of the agreement between the parties necessary to satisfy the Statute of Frauds. In addition, if necessary, the letter from appellant to appellee dated June 20, 1956, sup-

plies the name of the other party to the contract and indicates that it relates to the same transaction as the other two writings. It was signed by the party to be charged. Traub v. Nason & Childers, 57 N.M. 473, 260 P.2d 379, and Westerman v. City of Carlsbad, 55 N.M. 550, 237 P.2d 356, relied upon by appellant are distinguishable upon their facts. We think an examination of the writings together show that they are sufficient to satisfy the Statute of Frauds.

■ Appellant urges, however, that neither the invoice nor the letter of June 20, 1956 can be considered by us as constituting a part of the required memorandum because neither writing was found by the trial court to be a part of such written memorandum. It is true that under Rule 52(B) of our Rules of Civil Procedure the trial court is required, in a case tried without a jury, to find the facts necessary to support a judgment and the rule further provides for a remand for the making of findings when proper findings are not made. But an exception, born of common sense and presently germane, is made to the application of the rule. A remand is unnecessary if the missing fact required to support the judgment is documentary or appears undisputed in the record. Under such circumstances it may be supplied by us without remand. While our Rule 52(B) is not identical with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., they are substantially the same in regard to the

requirement that the trial court shall find the facts and make conclusions of law. For a similar construction of the comparable federal rule see Sbicca-Del Mac, Inc. v. Milius Shoe Co., 8 Cir., 145 F.2d 389; Yanish v. Barber, 9 Cir., 232 F.2d 939; 2 Barron & Holtzhoff, Federal Practice and Procedure § 1138.

■ The invoice and the letter of June 20, 1956 are documentary evidence, in the record and undisputed. Under these circumstances we will supply the facts from the record. In doing so we caution that we do not mean to affect our prior decisions exemplified by Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95, 98, requiring findings of fact to support conclusions of law where there are "factual questions raised by conflicting evidence", or where the credibility of witnesses is involved. In such instances this court cannot supply an omitted finding from the record.

■ Having determined that a valid contract of purchase and sale was entered into between the parties, the trial court awarded damages which gave to appellee the profit he would have received if the sale had been completed. Appellant complains of the inclusion of the down payment made by appellee in the award of damages. Its inclusion, however, merely placed appellee in the position in which he would have been had the contract between appellant and appellee been fulfilled. A

great deal of case law and text discussion exists as to whether such expenditures should be reimbursed in addition to an award for lost profits. For a complete discussion and citation of authorities see 5 Corbin on Contracts §§ 1031–1036 and the annotation at 17 A.L.R.2d 1300, but the rule is clear that appellee is entitled to recover expenditures that would have been reimbursed by the performance promised by appellant in addition to profits. A. R. A. Manufacturing Co. v. Pierce, 86 Ariz. 136, 341 P.2d 928; Weatherston's Associated Mechanical Services, Inc. v. Minnesota Mutual Life Ins. Co., 257 Minn. 184, 100 N.W. 2d 819; Restatement, Contracts § 333. Those decisions denying recovery for such expenditures deal with facts where the denial of recovery would not affect the profit. In this instance, if the $2,750 paid by appellee as part of the purchase price of the machinery he agreed to deliver to appellant should not be allowed, the profit which appellee would have made if appellant had completed his purchase agreement would be reduced by that amount.

■ Finally, appellant complains of the denial of its motion for summary judgment and motions to dismiss both before trial and at the end of appellee's case. The conclusions by the trial court affirmed by us is a complete answer to that ground urged for reversal. In view of the factual issues to be determined summary judgment was properly denied. Pederson v. Lothman, 63

N.M. 364, 320 P.2d 378; Michelson v. House, 54 N.M. 197, 218 P.2d 861. Other questions are argued but they either are resolved by what we have said, found to be without merit, or are unnecessary to determine.

Finding no error the judgment is affirmed. It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

CHAVEZ and MOISE, JJ., not participating.