412 P.2d 6

**Quirina DesGEORGES, *Individually* and Quirina DesGeorges, as Trustee under Declaration of Trust, dated August 10, 1960, and Bernice DesGeorges, a minor, by Josephine Martinez, her Sister and Next Best Friend, Plaintiffs-Appellants,**

**v.**

**Richard GRAINGER, Margaret M. Grainger, Frances Martin, individually and doing business as Northern New Mexico Real Estate Exchange, and Founders Mutual Depositor Corporation, a Colorado corporation, Defendants-Appellees.**

**No. 7552.**

Supreme Court of New Mexico.

Jan. 17, 1966.

Rehearing Denied March 17, 1966.

Stephen A. Mitchell, Taos, Thomas J. Russell, Chicago, Ill., for appellants.

Matias A. Zamora, Ernest E. Valdez, John E. Conway, Santa Fe, for appellees Grainger.

R. Howard Brandenburg, Taos, for appellee Martin.

MOISE, Justice.

In this action plaintiffs-appellants sued for rescission and restitution of amounts paid on a contract wherein appellant, Quirina DesGeorges, agreed to purchase and defendants-appellees Grainger agreed to sell a certain piece of land in Taos, New Mexico, upon which was located La Tuatah Motel, together with personal property therein. Defendant-appellee Frances Martin was the real estate broker who negotiated the transaction. Defendant-appellee Founders Mutual Depositor Corporation had issued certain certificates representing deposits made by appellants, which certificates had been endorsed and delivered to appellee, Mutual Depositor Corporation in connection with the transaction sought to be rescinded, and in this action the return thereof to appellants was sought.

Although the complaint recites in considerable detail the evidentiary facts upon which plaintiffs base their right to rescission, it is only necessary that we notice the allegation that the sellers did not hold title to the land contracted to be sold by them. It is asserted that the land was owned by the Pueblo of Taos, an Indian tribe and community, and that legal title was in the United States for the benefit of the Pueblo. By answer, the Graingers allege that the purchaser was advised of the possible claim of the Indians and was aware of this fact, and that the contract provided for title "as is," and they deny that the property was owned by the Pueblo of Taos or that title was in the United States for the benefit of the Pueblo. Graingers further deny any material misrepresentation on their part. Defendant Martin asserts in her answer that she specifically informed the purchaser that part of the land on which the motel was located was Indian land. Defendant Founders Mutual Depositor Corporation filed no answer or other pleading.

A pretrial conference was held, following which a pretrial order was entered. Aside from the recitals therein concerning the issues to be tried, certain specific exhibits were ordered received in evidence. Thereafter, a trial was held wherein plaintiffs presented their case and, after they had rested, motions of the defendants to dismiss under Rule 41(b) (§ 21-1-1(41) (b), N.M.S.A.1953) because of failure of proof to establish any right to relief were sustained and plaintiffs' complaint was accordingly dismissed with prejudice. This appeal followed.

Our consideration of the substantive merits of the appeal is materially blocked

by the absence of findings of fact required by Rules 41(b) and 52(B) (§§ 21-1-1(41)(b) and 21-1-1(52)(B), N.M.S.A.1953). None of the parties requested the court to make any findings, and the court did not do so.

Under Rule 52(B), supra, the trial court, when sitting without a jury, is required to make findings of fact. This is true even though a motion is sustained at the close of plaintiff's case. State ex rel. Reynolds v. Board of County Commissioners, County of Guadalupe, 71 N.M. 194, 376 P.2d 976; Pankey v. Hot Springs Nat'l Bank, 46 N.M. 10, 119 P.2d 636; Sandoval County Board of Education v. Young, 43 N.M. 397, 94 P.2d 508. Notwithstanding the fact that the rule is stated in mandatory language directed to the court, we have held that a party who has not requested the court to make findings on any given point, is not in position to obtain a review of the evidence on such point in this court. Edington v. Alba, 74 N.M. 263, 392 P.2d 675.

Accordingly, plaintiffs find themselves confronted by this rule which they must avoid in order for us to pass upon the issue which they argue for the first time here in their reply brief. It is their position that the fundamental issue before the court is one of law involving the validity of a contract to sell real property belonging to the Pueblo of Taos, and that the evidence is undisputed and documentary in the record that the property is Indian land.

We cannot agree that the issue presented is a question of law. Without some knowledge of the facts we have no basis upon which to make a determination of the correctness of the court's ruling on the law. Our attention is directed to Boswell v. Rio De Oro Uranium Mines, Inc., 68 N.M. 457, 463, 362 P.2d 991, 995, where we stated:

> "* * * It is true that under Rule 52(B) of our Rules of Civil Procedure the trial court is required, in a case tried without a jury, to find the facts necessary to support a judgment and the rule further provides for a remand for the making of findings when proper findings are not made. But an exception, born of common sense and presently germane, is made to the application of the rule. A remand is unnecessary if the missing fact required to support the judgment is documentary or appears undisputed in the record. Under such circumstances it may be supplied by us without remand. * * *"

The situation there differed only slightly from the one here present. The court had there made findings but had failed to find one material fact which was established by documentary and uncontradicted evidence, whereas here the court made no findings at all. The court recognized that rule 52(B), supra, provides that where proper findings are not made, the case shall be remanded so that they can be made, but stated that because of a "common sense" exception where

facts are not disputed and are based on writings, remand will not be required and the missing finding will be supplied. Although it does not appear in the opinion, an examination of the file discloses that the finding which the trial court did not make but which was nevertheless supplied without a remand in Boswell v. Rio De Oro Uranium Mines, Inc., supra, had not been requested. Certain findings had been requested and had been made by the court. While the rule followed in Boswell might be applied here, we note that (1) the defendants deny that the evidence is uncontradicted or wholly documentary, and (2) where more than the supplying of an absent finding is required, and in fact a whole set of findings must be made, we doubt that we should undertake to provide them. Examples of cases where we have remanded to the trial court for the making of findings are Isaac v. Seguritan, 66 N.M. 410, 349 P.2d 126; Smith v. South, 59 N.M. 312, 283 P.2d 1073; Moore v. Moore, 68 N.M. 207, 360 P.2d 394.

It seems to us that the identical considerations which moved the court to supply a material finding not requested, based on uncontroverted documentary evidence in Boswell v. Rio De Oro Uranium Mines, Inc., supra, would, because of the public policy question hereinafter discussed, support our doing the same thing here. Since we have no findings at all in the instant case, the same common sense approach there adopted dictates that we not undertake to supply the findings, but that we remand to the trial court so that it can make them. Although this case would seem to provide ample authority for a reversal and remand for findings, additional reasons and rules which we proceed to consider are at hand.

We take note of Prater v. Holloway, 49 N.M. 353, 164 P.2d 378, a case identical with the present one in that findings of fact had neither been requested nor made, and upon appeal this court remanded the case to the lower court to make findings and conclusions. This was done under Rule 52(B) (a) (7) (§ 21-1-1(52) (B) (a) (7), N.M.S.A.1953) because "the ends of justice" so required.

We do not consider Prater v. Holloway, supra, distinguishable from the present case either on the basis that a motion to dismiss had been there filed, or because certain recitals concerning facts were contained in the judgment. It is clear from the opinion that neither of these circumstances, absent in our case, was a basis for the conclusion reached. There, as here, the case was fully briefed and before the court on its merits, and the question of the effect of the failure to request findings and of the court to make findings was directly presented and considered. Furthermore, the court explicitly stated that the recitals in the judgment did not meet the requirements of the rule

so as to constitute a decision by the trial court, and no weight was accorded to them. The case is not distinguishable on any arguable basis. Prater v. Holloway, supra, was a suit for possession of land and for damages of $500.00. The reasons here present for considering the case on its merits are clearly more important and compelling than those in Prater could have possibly been. The court there stated that additional reasons for its conclusions need not be stated. Here, we deem it desirable that we set forth our reasons.

The instant case, as already noted, involves a contract to purchase and to sell a piece of property claimed by the plaintiffs to be Indian land. Defendants assert various reasons why this fact, if it is a fact, would nevertheless form no basis for a recovery by plaintiffs. Whatever the true facts are, and this determination must await the findings to be made by the court, we are clear that if the property is Indian land, the contract to sell was contrary to public policy and void, and rescission would be proper. Sage v. Hampe, 235 U.S. 99, 35 S.Ct. 94, 59 L.Ed. 147, is a suit for damages for breach of contract to sell Indian allotment lands, not owned by the defendant at the time. Federal statute made the sale of such lands by the allottee unlawful for 25 years. The Supreme Court of Kansas affirmed a judgment that the contract was valid and the plaintiff-purchaser entitled to damages for its breach because the defendant-seller was a stranger to the allotment. Hampe v. Sage, 87 Kan. 536, 125 P. 53. The United States Supreme Court reversed and, in the opinion, had the following to say:

> "* * * [N]o doubt it is true that a man may contract that a future event shall come to pass over which he has no, or only a limited, power. Globe Ref. Co. v. Landa Cotton Oil Co., 190 U.S. 540, 545, 23 Sup.Ct. 754, 47 L.Ed. 1171, 1173. And we assume in accordance with the decision of the Kansas courts that the principle applies to contracts for the conveyance of land that the contractor does not own. But that principle is not enough to dispose of the case, even if, subject to what we have to say hereafter, the universality of the invalidating language of the statute ('any contract') be confined to contracts by the owners of the land. A contract that on its face requires an illegal act, either of the contractor or a third person, no more imposes a liability to damages for nonperformance than it creates an equity to compel the contractor to perform. A contract that invokes prohibited conduct makes the contractor a contributor to such conduct. Kalem Co. v. Harper Bros., 222 U.S. 55, 63, 32 Sup.Ct. 20, 56 L.Ed. 92, 96, Ann.Cas.1913A, 1285. And more broadly, it long has been recognized that contracts that obviously and directly tend in a marked degree to bring

about results that the law seeks to prevent cannot be made the ground of a successful suit. Providence Tool Co. v. Norris, 2 Wall. 45, 17 L.Ed. 868; Trist v. Child (Busk v. Child), 21 Wall. 441, 22 L.Ed. 623; Oscanyan v. Winchester Repeating Arms Co., 103 U.S. 261, 26 L.Ed. 539; Fuller v. Dame, 18 Pick. 472. It appears to us that this is a contract of that class. It called for an act that could not be done at the time, and it tended to lead the defendant to induce the Indian owner to attempt what the law, for his own good, forbade. Such contracts, if upheld, might be made by parties nearly connected with the Indian, and strongly tend by indirection to induce him to deprive himself of rights that the law seeks to protect."

■ The case clearly establishes that *public policy prevents disposing of Indian* allotment property before the passage of 25 years, when the allottee may sell it. Further, it dictates that anyone dealing with the property at an earlier time, either as a buyer or a seller, cannot profit therefrom. We quote the following additional language:

> "* * * The case at first sight *seems like those in which a state decides* to enforce or not to enforce a domestic contract notwithstanding or because of its tendency to cause a breach of the law of some other state. Graves v. Johnson, 179 Mass. 53, 60 N.E. 383, 88 Am.St.Rep. 355; 156 Mass. 211, 30 N.E. 818, 15 L.R.A. 834, 32 Am.St.Rep. 446. But the policy involved here is the policy of the United States. It is not a matter that the states can regard or disregard at their will. There can be no question that the United States can make its prohibitions binding upon others than Indians to the extent necessary effectively to carry its policy out, and therefore, as on the grounds that we have indicated, the contract contravenes the policy of the law, there is no reason why the law should not be read, if necessary, as broad enough to embrace it in terms."

If the contract here is one which, as alleged, involves dealing with Indian land not owned or subject to sale by the sellers, under the doctrine of Sage v. Hampe, supra, the conclusion reached by the trial court would be erroneous and the result would be to promote an activity contrary to public policy. In order to determine this fact, findings are imperative. For this reason, we deem the rule of Prater v. Holloway, supra, to be applicable.

■ To our minds, there is a strong parallel here to the exceptional situation *long recognized by this court which permits* consideration of issues raised for the first time in the Supreme Court. The rule and the exceptions are clearly stated in Sais v. City Electric Co., 26 N.M. 66, 68, 188 P. 1110, 1111, as follows:

"The propositions of law which we have discussed in this opinion, and which work a reversal of this case, were not only not assigned and argued in this court, but were not even raised in the trial court. A general rule has been announced by this court to the effect that propositions of law not raised in the trial court cannot be considered here, and the reasons underlying such rule were fully discussed in the case of Fullen v. Fullen, 21 N.M. 212, 153 P. 294. Three specific exceptions to that rule have also been announced in this court, viz.: (1) That jurisdictional questions may be raised for the first time here. United States v. Cook, 15 N.M. 124, 103 P. 305; State v. Graves, 21 N.M. 556, 157 P. 160; State ex rel. Baca v. Board of Commissioners of Guadalupe County, 22 N.M. 502, 165 P. 213; Hopkins v. Norton, 23 N.M. 189, 167 P. 425; James v. Board of Commissioners of Socorro County, 24 N.M. 509, 512, 174 P. 1001. (2) That questions of a general public nature affecting the interest of the state at large may be determined by the court without having been raised in the trial court. First National Bank v. McBride, 20 N.M. 381, 149 P. 353. And (3) that the court will determine propositions not raised in the trial court where it is necessary to do so in order to protect the fundamental rights of the party. State v. Garcia, 19 N.M. 414, 421, 143 P. 1012."

As already noted, the issue here is one involving the public policy and interest and comes directly within exception (2) in the quotation above. We can imagine no reason why a similar exception should not be applicable where an issue such as is here presented is raised for the first time in this court, and objection is made because of a failure to request findings. For other cases applying the exception, see Werner v. Garcia, 57 N.M. 249, 257 P.2d 929; Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231; Candelaria v. Gutierrez, 30 N.M. 195, 230 P. 436; Baca v. Perea, 25 N.M. 442, 184 P. 482. For decisions from other states, see Massachusetts National Bank v. Shinn, 163 N.Y. 360, 57 N.E. 611, and the recent case of Cordes v. Hoffman, 19 Wis.2d 236, 120 N.W.2d 137.

We recognize that our Rule 52 (§ 21-1-1(52), N.M.S.A.1953) was not copied from the federal rules. Also, we appreciate that federal rule 52 has been held to require the courts to make findings, even though not requested, Cafritz v. Koslow (1948) 83 U.S.App.D.C. 212, 167 F.2d 749, whereas, as already noted, we hold generally that if findings are not requested or made, there can be no review of the facts in this court. Edington v. Alba, supra. Never-

theless, we must not lose sight of the fact that our rules were adopted to further a policy of adjudication of cases on their merits rather than on technicalities and form. Carroll v. Bunt, 50 N.M. 127, 172 P.2d 116. Similarly, our Supreme Court rules were adopted to promote "the speedy determination of litigation upon its merits." § 21-3-1, N.M.S.A.1953. We must ever keep in mind that we should apply the practice rules as well as the appellate rules in a reasonable manner which will, when possible, promote decisions on the merits of a cause rather than on technicalities. In so doing, in the instant case, we consider that we are well fortified by the authorities relied upon.

It follows from what has been said that the cause should be remanded to the district court with directions to set aside its judgment and to proceed in a manner consistent with this opinion and the applicable rules of procedure, including but not limited to permitting the parties to file requested findings of fact and conclusions of law.

It is so ordered.

CHAVEZ and COMPTON, JJ., concur.

CARMODY, C. J., and NOBLE, J., dissent.

CARMODY, Chief Justice (dissenting).

I must dissent from the majority opinion. It is a glaring example of the truth of the saying that "hard cases make bad law." It is also a striking illustration of an appellate court attempting to do what it feels is substantial justice as distinguished from correcting errors.

We have a relatively simple case involving a contract between the parties. The rights, duties and obligations of the parties alone are concerned. No interest of the Indians can be affected by this decision and I fail to see how the rescission or nonrescission of the contract contains any question of a general public nature affecting the interest of the state.

Neither party requested findings nor conclusions, and the court made none. In an almost unbroken line of cases, this court has plainly held that, absent a request for findings and conclusions, a general judgment will be sustained. See Carlisle v. Walker, 1943, 47 N.M. 83, 136 P.2d 479; Teaver v. Miller, 1949, 53 N.M. 345, 208 P.2d 156; Gilmore v. Baldwin, 1955, 59 N.M. 51, 278 P.2d 790; Scuderi v. Moore, 1955, 59 N.M. 352, 284 P.2d 672; Owensby v. Nesbitt, 1956, 61 N.M. 3, 293 P.2d 652; In re Guardianship of Caffo, 1961, 69 N.M. 320, 366 P.2d 848; and Gillit v. Theatre Enterprises, Inc., 1962, 71 N.M. 31, 375 P.2d 580; and cf. Edington v. Alba, 1964, 74 N.M. 263, 392 P.2d 675. It is of interest that Gilmore v. Baldwin, supra, was

decided upon a motion to dismiss at the close of plaintiff's case, just as occurred in the instant case.

The majority in this case, however, have remanded with instructions to vacate the judgment, make findings and conclusions, and to enter a new judgment. They rely heavily upon Prater v. Holloway, 1945, 49 N.M. 353, 164 P.2d 378, in support of their position. In my view, even Prater, which stands alone among our many decisions, does not support what the majority have done here. In Prater, contrary to the instant case, the court did make findings of ultimate facts in the judgment itself, as distinguished from setting them forth in a separate instrument denominated a decision as required by Rule 52(B) (a) (§ 21-1-1 (52) (B) (a)). That opinion there discussed the failure to state the findings separately; to state findings separately from conclusions; to separately number each and to include them all in a separate instruction as required by the rule. The remand there was to solely make findings and conclusions as required by the rule and return them to this court. Prater did not reverse the judgment with permission to reopen the case. In my view, Prater only contemplated the preparation of the decision, i. e., the findings and conclusions separately stated and in a single instrument, and its return to this court. The majority in the instant case go much farther and reverse the decision itself, and direct a reconsideration of the entire case.

Reliance is placed upon Boswell v. Rio De Oro Uranium Mines, Inc., 1961, 68 N.M. 457, 362 P.2d 991, as supporting the majority's remand. Boswell, however, was limited to the proposition that this court could supply a single finding of fact necessary to support the judgment when that fact was evidenced by uncontroverted documentary evidence. In any event, the majority opinion plainly discloses that Boswell has no application to the instant case. Neither Boswell, nor the cases cited as examples justifying remand for findings, are any support for the decision today announced.

I have no fault to find with the majority's quotations from Sage v. Hampe, 1914, 235 U.S. 99, 35 S.Ct. 94, 59 L.Ed. 147, but that decision is applicable only where the court has before it facts by which to base a determination of law. Here, there are no facts; therefore, there is nothing for the court to consider. By its decision today, the majority have, in effect, determined that subsection (7) of Rule 52(B) (a) should take precedence over subsection (6), the over-all result that even though findings are waived under subsection (6), this court will, nevertheless, principally, on the equities, render decisions on the merits.

The function of the Supreme Court is to review the action of the lower court, Moun-

tain View Corporation v. Horne, 1964, 74 N.M. 540, 541, 395 P.2d 676, not to rectify errors of counsel under the guise of promoting the speedy determination of litigation. We require compliance with the rules of procedure by attorneys and by the trial courts. I feel that this court should ignore neither our rules nor the precedent of our former decisions in an effort to arrive at what might seem to be an equitable result in a simple case. Our system of jurisprudence is based upon stability by following the precedent of the decided cases until we are convinced that those cases should be overruled.

The exception in Sais v. City Electric Co., 1920, 26 N.M. 66, 188 P. 1110, is not applicable in the instant case because that exception has only been applied to certain facts found to exist. Here, we have no facts and under our rules, we are not permitted to examine the evidence or determine the facts. The majority have cited no case nor have I been able to discover one in which the Sais exception has been applied where the true facts have not been determined.

For the reasons given, I must respectfully dissent from the opinion announced by the majority.

NOBLE, Justice.

I concur in the dissent of Chief Justice CARMODY.